[Nos. B033071, B032775. Second Dist., Div. Three. Nov. 29, 1988.]

HUNTINGTON PARK CLUB CORPORATION et al., Plaintiffs and Respondents, v.
COUNTY OF LOS ANGELES, Defendant and Appellant.

242

## Counsel

De Witt W. Clinton, County Counsel, S. Robert Ambrose, Assistant County Counsel, Dennis M. Gonzales and Kevin C. Brazile, Deputy County Counsel, for Defendant and Appellant.

Barash & Hill, Jerry M. Hill, Kenneth W. Kossoff, Donna M. Klugman, Brady & Ford, Brendon P. Brady, Bakst & Garber, Martin S. Bakst, Musick, Peeler & Garrett, James W. Miller, Richard D. Dear, Simke, Chodos, Silberfeld & Anteau, David Manning Chodos and Richard A. Fond for Plaintiffs and Respondents.

## Opinion

**DANIELSON, J.**—The County of Los Angeles (the County) appeals from a judgment granting declaratory relief and permanent injunction in favor of Huntington Park Club Corporation (Huntington Park Club), Bell Gardens Bicycle Club (Bell Gardens Club), California Bell Club (California Bell), The Anthony Company, dba The Normandie Club, The El Dorado Club, and The Horseshoe Club, aka "Gardena Card Clubs", (Anthony) (collectively, plaintiffs),[1] and a permanent injunction restraining and enjoining the County from preventing or otherwise interfering with the playing of the game commonly known as pai gow in plaintiffs' gaming establishments.

We reverse the judgment.

---

[1] Huntington Park Club was the original plaintiff in Los Angeles Superior Court Case No. 527544. Bell Gardens Club, California Bell and Anthony were the plaintiffs, and the County of Los Angeles was a defendant, in other related actions. These actions were subsequently consolidated under LASC No. 527544, and we treat them as one case for the purposes of this appeal.

## ISSUES PRESENTED

The principal issue is whether the term "percentage game" in Penal Code section 330 (section 330) is unconstitutionally ambiguous or vague. In resolving that issue we must also determine the definition of percentage game. Our remaining inquiry is whether pai gow, as played in plaintiffs' gaming establishments, violates the proscription in section 330 against banking games or percentage games.

## FACTUAL AND PROCEDURAL STATEMENT

In August 1984, the City of Huntington Park enacted an ordinance which authorized plaintiff Huntington Park Club to play the game "pai gow" in its gaming club.[2] On December 12, 1984, the Los Angeles County District Attorney's office rendered an opinion stating that the version of pai gow in which a dealer plays against more than one player is a "banking game," prohibited by section 330.

On December 13, 1984, the Chief of Police of the City of Huntington Park officially notified plaintiff Huntington Park Club that the playing of pai gow, "or any other game as a banking or percentage game" was a violation of section 330, and ordered plaintiff to cease and desist from such activities.

On December 20, 1984, Huntington Park Club commenced the underlying civil action against the City of Huntington Park, the County of Los Angeles, and Does, seeking a judicial declaration that the playing of pai gow is lawfully permitted, and injunctive relief forbidding the defendants from enforcing the cease and desist order and forcing plaintiff to cease operating its pai gow gaming tables.

On January 18, 1985, Judge John Cole issued a preliminary injunction enjoining the County of Los Angeles and the City of Huntington Park, inter alia, from preventing or otherwise interfering with the playing, in plaintiffs' gaming establishments, of the game known as "Chinese Pai Gow" so long as pai gow was played in the latter's gaming establishments pursuant to the terms of that injunction (preliminary injunction).

On April 11, 1985, Division Seven of this court denied the County's petition for a writ of mandate or prohibition with respect to the preliminary injunction.

---

[2] Similar enactments were adopted in other cities which affected the remaining plaintiffs.

Pai gow is intended to be played or has been played at plaintiffs' establishments in accordance with the terms of the preliminary injunction.[3]

The present action was tried before the court on July 13 through 17 and 20, 1987.

On December 15, 1987, the trial court issued a statement of intended decision in which the court stated that the term "percentage game" in section 330 was unconstitutionally vague and that pai gow was not an illegal banking game or percentage game.

On February 8, 1988, the court granted the County's motion to reopen for the purpose of introducing additional documentary evidence into the record.

On February 12, 1988, judgment, which had first been entered January 20, 1988, was reentered in favor of plaintiffs and against the defendants, including the County, and all persons acting in concert with them or at their direction, on their complaint for declaratory relief and a permanent injunction.

In the judgment the court found that "Pai Gow, as played in plaintiffs' clubs and as hereinbelow described, is neither a banking game nor a percentage game. . . . [T]he game of Pai Gow, as lawfully played in plaintiffs' clubs, is characterized by, among other things, the following: [¶] (a) The game of Pai Gow is played with domino-like tiles. [¶] (b) In each round of play, there is one hand out of eight maximum hands dealt which is designated as the dealer hand. More than one participant may wager on a hand. [¶] (c) A minimum wager may be required of each participant, with no other minimum wager required of the participants. [¶] (d) The same minimum wager may be required of the participant designated to receive the dealer hand for a given round of play, with no other minimum wager required by the dealer hand. In any given round of play, the participant designated to receive the dealer hand is required to place a fixed wager. [¶] (e) The dealer position continually and systematically rotates among each of the participants. [¶] (f) Plaintiffs [the house] do not participate as a player in the game, and have no interest in the outcome of play. [¶] (g) Plaintiffs [the house] charge a rental fee from the participants based upon the amount of each participant's wagers or upon the amount of each participant's winnings. [¶] (h) A round of play terminates either when all participants' hands are

---

[3] The record does not support the position of Huntington Park Club and California Bell that their charges are solely for use of space and facilities. Rather, the fees are derived from the winnings of the pai gow players.

played and wagers are settled, or when the dealer position wins or loses the amount it wagered, whichever occurs first. Thus, in any given round of play, anywhere from only two hands to all eight hands dealt will actually be played. [¶] (i) No participant ever plays against or makes a wager against plaintiffs [the house]."[4] (Cf. *Walker* v. *Meehan, supra,* 194 Cal.App.3d 1290, 1294, at fn. 2.)

The County served and filed a timely notice of appeal.

We reverse the judgment, which was entered on February 12, 1988.

## DISCUSSION

### I. *The Constitutional Precision of the Term "Percentage Game" in Section 330*

Section 330 provides: "Every person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noire, rondo, tan, fan-tan, stud-horse poker, seven-and-a-half, twenty-one, hokey-pokey, or any banking or percentage game played with cards, dice, or any device, for money, checks, credit, or other representative of value, and every person who plays or bets at or against any of said prohibited games, is guilty of a misdemeanor, and shall be punishable by a fine not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000), or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment."

The County asserts that the trial court erred in finding the term "percentage game" in section 330 to be unconstitutionally vague and ambiguous.

---

[4] We observe that the above definition of pai gow, which is set forth in the judgment, is not exactly identical in wording with the definition of pai gow set forth in the preliminary injunction issued by Judge Cole which is part of the record on appeal in this case and is set forth in footnote 2 of the decision in *Walker* v. *Meehan* (1987) 194 Cal.App.3d 1290, at 1294 [240 Cal.Rptr. 171]. In the preamble of the judgment here appealed from the court stated that it had made and filed its statement of intended decision. In that statement the court declared that "[t]he order of Judge Cole in this case should become permanent and counsel for plaintiff[s] are to include appropriate language in the Judgment which they will be ordered to prepare." At oral argument in this appeal counsel who prepared the judgment stated that he did not realize that any such differences existed and he represented that he had thought the definition of pai gow in the judgment was identical with that in Judge Cole's order. Based upon the foregoing, and our comparison of the two definitions, we conclude that the differences between the definitions are immaterial and of no legal import to the issues of this case.

We agree.

In its statement of intended decision the court reasoned:

"Pai Gow as played under Judge Cole's injunction [the preliminary injunction] is not a percentage game. Percentage game as used in . . . Section 330 based on the testimony of experts in this case is vague and ambiguous. This defect is apparent in contrasting the difficulty experts had in defining the phrase in the course of this trial. It is susceptible of many different interpretations. The balance of . . . Section 330 does not create the same ambiguity or imprecision of definition. Percentage game does not give adequate notice to the public of the conduct which it prohibits. Nothing in the statute tells a person of ordinary intelligence what the term means. It has no commonly accepted meaning based on the expert testimony in this case."

In its judgment the court ordered and adjudged that: " 'Percentage game', as used in . . . Section 330, is vague and ambiguous and does not give adequate notice to the public of the conduct which it prohibits. Nothing on the face of or in the context of Section 330 tells a person of ordinary intelligence what the term 'percentage game' means. The Court finds that, based on the expert testimony, the term 'percentage game' has neither a commonly accepted meaning nor a technical meaning within the gaming industry. For these reasons, the Court holds that the phrase 'percentage game' as used in Penal Code section 330 is unconstitutional and further holds that the 1885 amendment to Penal Code section 330, which added the term 'percentage game' to that statute, is unconstitutional."

The fallacy underlying the court's reasoning is its misapprehension of the applicable standard. ▉ Whether the term "percentage game" in section 330 is unconstitutionally vague or ambiguous does not turn on the weighing of expert testimony. Instead, the definition of "percentage game" in section 330, and its precision, must be resolved by the court as an issue of law, not as a question of fact. (See *Sullivan* v. *Fox* (1987) 189 Cal.App.3d 673, 678 [235 Cal.Rptr. 5]; *Walker* v. *Meehan, supra,* 194 Cal.App.3d 1290, 1301; *People* v. *Carroll* (1889) 80 Cal. 153, 157-158 [22 P. 129]; *People* v. *Hardy* (1969) 271 Cal.App.2d 322, 327 [76 Cal.Rptr. 557].)

▉▉▉▉ Although the term "percentage game" in section 330 is not statutorily defined, that term has been the subject of judicial interpretation.[5]

---

[5] The *Sullivan* decision was filed in January 1987, and the *Walker* decision was filed in August 1987. In its statement of intended decision filed December 1987, the trial court apparently chose to disregard these authorities on the ground those cases were decided by the First District and a contrary conclusion was reached by this court. The trial court reasoned that

■ In *Sullivan* v. *Fox, supra,* 189 Cal.App.3d 673, the court "construe[d] the language in section 330 referring to percentage game as encompassing any game of chance from which the house collects money calculated as a portion of wagers made or sums won in play, exclusive of charges or fees for use of space and facilities. [Citation.]" (*Id.* at p. 679.)

The *Sullivan* definition of percentage game in section 330 was upheld and followed in *Walker* v. *Meehan, supra,* 194 Cal.App.3d 1290 at pages 1301-1304, against a challenge of unconstitutional vagueness. In finding no constitutional infirmity the *Walker* court reasoned that "the common element in every definition of the term 'percentage' is that its calculation is based upon the amounts wagered. It is this fact which was isolated by the *Sullivan* court as the object of the prohibition of . . . section 330. The prohibition of section 330 has a meaning which sufficiently advises persons of ordinary intelligence that games which are conducted as banking games are illegal, as are games in which the house deducts a percentage from the amounts wagered. [Citation.]" *Walker* v. *Meehan, supra,* 194 Cal.App.3d 1290, 1303.)

Based on our review of the applicable law we find the *Walker* court's analysis to be persuasive and adopt the *Sullivan* court's construction of the term percentage game in section 330. (See *Duffy* v. *State Bd. of Equalization* (1984) 152 Cal.App.3d 1156, 1174 [199 Cal.Rptr. 886] (" '[I]f the statute has been judicially construed, such construction of the statutory words become part of the statute "as if it had been so amended by the legislature" [Citations.]' ".) ■ In view of the foregoing, we hold, as a matter of law, the term "percentage game" in section 330 is not unconstitutionally vague or ambiguous.

## II. *Section 330's Proscription Against Pai Gow*

The County's remaining assignment of error concerns the court's finding that pai gow as played according to the description set forth in the preliminary injunction does not violate section 330's proscription against banking

---

"in affirming" the preliminary injunction "[t]his district apparently sanctions the playing of Pai Gow so long as it is played in conformity with Judge Cole's order." We find that the trial court's reliance on the unpublished order filed April 11, 1985, by Division Seven of this court, denying the petition for a writ of mandate or prohibition to overturn Judge Cole's order granting a preliminary injunction, was misplaced. A ruling on a petition for a writ of mandate involving a preliminary injunction is not a decision on the merits and does not operate as the law of the case which would be binding on the trial court. (See *Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 286 [219 Cal.Rptr. 467, 707 P.2d 840]; *Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 218 [211 Cal.Rptr. 398, 695 P.2d 695]; *Jomicra, Inc.* v. *California Mobile Home Dealers Assn.* (1970) 12 Cal.App.3d 396, 401 [90 Cal.Rptr. 696].)

games or percentage games. The County takes the position that pai gow as played under the description set forth in the preliminary injunction violates both proscriptions.

■ Whether a particular game falls within the proscription of section 330 presents a factual question. (*Walker* v. *Meehan, supra,* 194 Cal.App.3d 1290, 1301.) ■ Having reviewed the record we conclude that the court erred in finding that pai gow as played under the terms of the preliminary injunction does not constitute a percentage game under section 330. ■ On the other hand, we further conclude the court correctly found that pai gow *as played in this case* does not violate section 330's proscription against banking games.

## A. *Pai Gow as a Percentage Game*

The record reflects, and it is undisputed, that pai gow is played at plaintiffs' establishments pursuant to the method set forth in the preliminary injunction. Under that injunction plaintiffs are permitted to charge a rental fee from the participants in the game of pai gow based on the amount each participant wagers. ■ This method of collecting fees, as opposed to charging a fee for space used or based on playing time of each participant, is impermissible under section 330's proscription against percentage games, which encompasses "any game of chance from which the house collects money calculated as a portion of wagers made or sums won in play, exclusive of charges or fees for use of space or facilities." (*Sullivan* v. *Fox, supra,* 189 Cal.App.3d 673, 679, 683; accord, *Walker* v. *Meehan, supra,* 194 Cal.App.3d 1290, 1293, 1294, 1304.)

## B. *Pai Gow as a Banking Game*

The court found pai gow as played under the injunction was not a banking game under section 330 since the house (one of the plaintiffs) does not play, does not cheat, and does not pay less than full odds. In other words, the plaintiffs have no interest in the outcome of the game or in who wins or loses.

■ The County challenges the court's finding on the ground the court erred in applying the following definition of a banking game, which was impermissibly based on expert testimony: A banking game under section 330 "is a game in which one player (the house) continuously banks the games and has a fund of money against which all players bet. The house pays all winners and collects all losses." The County argues that the term "banking game" in section 330 is not limited solely to the situation where

the house (plaintiffs) participates as a player or requires the house to bank the game continuously.

■ We agree that the definition of a banking game is a legal question which does not turn on expert testimony. (See, e.g., *Walker* v. *Meehan, supra,* 194 Cal.App.3d 1290, 1301.) ■ "Banking game has come to have a fixed and accepted meaning: the 'house' or 'bank' is a participant in the game, taking all comers, paying all winners, and collecting from all losers. [Citations.]"[6] (*Sullivan* v. *Fox, supra,* 189 Cal.App.3d 673, 678.)

■ Applying the above definition to this case, it is clear that under the present facts pai gow is not a banking game proscribed under section 330 since the record does not establish that either plaintiffs (the house) or any other entity maintains or operates a "bank."

## DECISION

The judgment is reversed with directions to enter a new and different judgment consistent with the views expressed in this opinion. Appellant to recover costs on appeal.

Klein, P. J., and Croskey, J., concurred.

A petition for a rehearing was denied December 23, 1988, and respondents' petitions for review by the Supreme Court were denied February 23, 1989.

---

[6]The County asserts that the house (plaintiffs) does not have to participate in the game in order for a banking game under section 330 to be found, since the use of the disjunctive "or" in the above definition signifies that the proscription applies equally to the "house" and the "bank" as two separate and different types of participants. Under the unique facts of this case no issue has been raised as to whether a "banking game" would result if a person other than the "house" were to maintain and operate the "bank." We do not reach and do not decide that question.