[No. B048866. Second Dist., Div. One. July 2, 1991.]

CITY OF BELL GARDENS et al., Plaintiffs and Respondents, v. COUNTY OF LOS ANGELES et al., Defendants and Appellants.

ANTHONY COMPANY, et al., Plaintiffs and Respondents, v. COUNTY OF LOS ANGELES et al., Defendants and Appellants.

1564

## Counsel

De Witt W. Clinton, County Counsel, S. Robert Ambrose, Assistant County Counsel, and Kevin C. Brazile, Deputy County Counsel, for Defendants and Appellants.

Wallin, Kress, Reisman, Price & Dilkes, Peter L. Wallin, Musick, Peeler & Garrett, Richard D. Dear, James W. Miller, Brian E. Shear, Simke, Chodos,

Silberfeld & Anteau, David Manning Chodos, Richard A. Fond, Barash & Hill, Jerry M. Hill, Guy C. Nicholson and Alexander H. Pope for Plaintiffs and Respondents.

## OPINION

**ORTEGA, Acting P. J.**—We conclude the trial court properly enjoined defendants County of Los Angeles and the Sheriff's Department of the County of Los Angeles from unlawfully interfering with the playing of pai gow, pai gow poker, and pan 9 at the Bell Gardens Bicycle Club, the California Commerce Club, the El Dorado Club, and the Normandie Club (the card clubs). We affirm the judgment and impose sanctions on appeal against the county.

### BACKGROUND

Pai gow, pai gow poker and pan 9 (the pai gow games) share a common betting format: The position of dealer rotates systematically among the players and each player has the opportunity to act as dealer for two consecutive rounds. The player/dealer makes the initial bet, and the other players bet against him. The player/dealer pays off winners and collects from losers, but only until the player/dealer wins or loses his initial wager. Thereafter, the round of play terminates even though there are remaining players at the table who have winning or losing hands. Accordingly, the player/dealer is not required to pay all winners, and the player/dealer may only collect from losers up to the amount the player/dealer wagered.

The county and the sheriff's department contend the pai gow betting format violates Penal Code section 330's proscription against banking games.[1] On December 29, 1988, the sheriff's department arrested players and dealers participating in pai gow games at the card clubs, and charged them with violating section 330. On January 3, 1989, the sheriff's department warned the card clubs that further arrests would be made if pai gow games continued to be played.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

Section 330 provides in relevant part: "Every person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, . . . any banking or percentage game played with cards, dice, or any device, for money, checks, credit, or other representative of value, and every person who plays or bets at or against any of said prohibited games, is guilty of a misdemeanor, and shall be punishable by a fine not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000), or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment."

The card clubs ceased conducting pai gow games as a result of the warning. Thereafter, the City of Commerce, the City of Bell Gardens, and the card clubs filed these consolidated actions for declaratory and injunctive relief against the county and the sheriff's department to enjoin them from interfering with the playing of pai gow games. After issuing a preliminary injunction, the trial court granted summary judgment for the plaintiffs and permanently enjoined the county and the sheriff's department from interfering with the playing of pai gow games so long as the above described betting format is used. This appeal followed.

## ISSUE

The dispositive issue is whether the prior adjudication that pai gow is not a banking game (*Huntington Park Club Corp. v. County of Los Angeles* (1988) 206 Cal.App.3d 241, 249-250 [253 Cal.Rptr. 408]) bars the county and the sheriff's department from relitigating the issue.

## DISCUSSION

A prior judgment is binding in subsequent proceedings when "(1) the identical issue is under consideration; (2) a final judgment was reached on the merits in the earlier adjudication; (3) the party against whom that judgment is now asserted was a party or in privity with a party in the prior action. [Citations.]" (*Summerford v. Board of Retirement* (1977) 72 Cal.App.3d 128, 130 [139 Cal.Rptr. 814].) For the reasons that follow, we conclude these three conditions have been met in this case and that the county and the sheriff's department are barred from relitigating the issue of whether pai gow is a banking game.

In *Huntington Park Club Corp. v. County of Los Angeles, supra,* 206 Cal.App.3d at pages 249-250, Division Three of this court held that pai gow is not a banking game. The county and the sheriff's department were both parties in that action. Although the *Huntington Park* case involved only pai gow whereas this case involves pai gow poker and pan 9 as well, the county and the sheriff's department concede that the betting formats of these games are identical.

In *Huntington Park*, the plaintiffs (including three of the four card clubs who are plaintiffs herein) sued the county and the sheriff, among others, for declaratory and injunctive relief to prevent them from interfering with the playing of pai gow in their gaming establishments. The county and the sheriff contended that pai gow was both a banking game and a percentage

game in violation of section 330.[2] The lower court issued a preliminary injunction in favor of the plaintiffs, and Division Seven of this court denied the county's petition for a writ of mandate or prohibition with respect to the preliminary injunction. Following a trial, the superior court entered judgment for the plaintiffs and held that pai gow is neither a banking game nor a percentage game. On appeal, Division Three of this court agreed that pai gow, as played therein, is not a banking game. (*Huntington Park Club Corp. v. County of Los Angeles, supra,* 206 Cal.App.3d at p. 250.) However, Division Three reversed the trial court by ruling that pai gow, as it was then played, violated section 330's proscription against percentage games. (*Id.* at p. 249.)

The percentage game issue is not before us. Following the *Huntington Park* decision, the card clubs began charging a flat fee rather than collecting a percentage of the winnings. Due to this change, the county and the sheriff's department no longer contend that pai gow games are percentage games.

The county and the sheriff's department continue to maintain, however, that pai gow games are banking games. But we conclude the banking game issue was finally adjudicated against the county and the sheriff, and they may not relitigate the issue.

In *Huntington Park,* Division Three specifically found that pai gow is not a banking game "since the record does not establish that either plaintiffs (the house) or *any other entity* maintains or operates a 'bank.' " (*Huntington Park Club Corp.* v. *County of Los Angeles, supra,* 206 Cal.App.3d at p. 250, italics added.) Division Three explained: "[T]he definition of a banking game is a legal question which does not turn on expert testimony. [Citation.] 'Banking game has come to have a fixed and accepted meaning: the "house" or "bank" is a participant in the game, taking [on] all comers, paying all winners, and collecting from all losers. [Citations.]' (*Sullivan* v. *Fox* [1987] 189 Cal.App.3d [673], 678.)" (*Huntington Park Club Corp.* v. *County of Los Angeles, supra,* 206 Cal.App.3d at p. 250, fn. omitted.)

Despite this distinct pronouncement, the county and the sheriff's department claim the *Huntington Park* opinion failed to decide whether player/dealers may be charged with maintaining and operating a bank in violation of section 330. They contend the *Huntington Park* decision focused

---

[2]The county and the sheriff were both represented by the Los Angeles County Counsel's office in the *Huntington Park* case. Although the county counsel filed a joint answer on their behalf in that case, documents later filed by the county counsel failed to designate the sheriff in the caption. We assume this omission was unintentional and that the judgment applied to the sheriff as well as the county.

exclusively on the question of whether card clubs, as opposed to player/ dealers, were maintaining and operating a bank in violation of section 330. In support of this dubious position, the county and the sheriff rely exclusively on footnote 6, at page 250, of the *Huntington Park* opinion, which states: "The County asserts that the house (plaintiffs) does not have to participate in the game in order for a banking game under section 330 to be found, since the use of the disjunctive 'or' in the above definition signifies that the proscription applies equally to the 'house' and the 'bank' as two separate and different types of participants. *Under the unique facts of this case no issue has been raised as to whether a 'banking game' would result if a person other than the 'house' were to maintain and operate the 'bank.' We do not reach and do not decide that question.*" (*Huntington Park Club Corp. v. County of Los Angeles, supra,* 206 Cal.App.3d at p. 250, fn. 6, italics added.)

In order to interpret footnote 6 in this manner, however, one would have to presume that Division Three ignored the facts contained both in the *Huntington Park* record and in its own opinion. Nothing in the opinion supports this irrational presumption. On the contrary, the opinion expressly acknowledged that players, not card clubs, serve as dealers on a rotating basis. (*Huntington Park Club Corp. v. County of Los Angeles, supra,* 206 Cal.App.3d at pp.$4x245-246.) Division Three, having recognized that the dealer position rotates among the players, concluded that "*the record does not establish that . . . any . . . entity maintains or operates a 'bank.'*" (*Huntington Park Club Corp. v. County of Los Angeles, supra,* 206 Cal.App.3d at p. 250, italics added.) We fail to see how the court could have more clearly expressed its holding.

Footnote 6 contains material which is "merely parenthetic" to the court's opinion. (*McAdory v. Rogers* (1989) 215 Cal.App.3d 1273, 1277 [264 Cal.Rptr. 71].) Footnote 6 simply recognized that the pai gow betting format may someday be changed such that the county and the sheriff's department might be able to prove that pai gow is a banking game. For example, if a rule change permitted a player to take all comers, pay all winners, and collect from all losers, the game would, under the *Sullivan* definition, be a banking game. (*Sullivan v. Fox* (1987) 189 Cal.App.3d 673, 678 [235 Cal.Rptr. 5].)

The betting format in this case, however, is identical to the betting format involved in the *Huntington Park* case. Division Three conclusively determined that pai gow is not a banking game and directed the superior court to enter a new judgment consistent with its views (*Huntington Park Club Corp. v. County of Los Angeles, supra,* 206 Cal.App.3d at p. 250), thereby establishing the law of the case. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 636, p. 617.) The final determination of the banking game issue

against the county and the sheriff's department bars them from collaterally attacking the judgment in this action. (*Safeco Insurance Co. v. Tholen* (1981) 117 Cal.App.3d 685, 696 [173 Cal.Rptr. 23]; *Kingsbury v. Tevco, Inc.* (1978) 79 Cal.App.3d 314, 318 [144 Cal.Rptr. 773]; Code Civ. Proc., § 1908, subd. (a)(2).[3])

Although the county and the sheriff raise numerous contentions challenging Division Three's adverse determination of the banking game issue, we find the contentions wholly lacking in merit. And even if we were to assume for the sake of argument that Division Three erred in its determination, the outcome of this appeal would remain the same. ■ "For the purpose of the doctrine of res judicata, ' "[a]n erroneous judgment is as conclusive as a correct one. [Citation.]" ' " (*Smith v. Smith* (1981) 127 Cal.App.3d 203, 209 [179 Cal.Rptr. 492], quoting *Weil v. Barthel* (1955) 45 Cal.2d 835, 839 [291 P.2d 30]; *Beverly Hills Nat. Bank v. Glynn* (1971) 16 Cal.App.3d 274, 286 [93 Cal.Rptr. 907].)

We hold the trial court properly granted the plaintiffs' motions for summary judgment and properly issued a permanent injunction prohibiting the county and the sheriff's department from unlawfully interfering with the playing of pai gow games as described in the record.

### FRIVOLOUS APPEAL

Code of Civil Procedure section 907 provides that "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." Rule 26(a) of the California Rules of Court similarly provides in relevant part that "Where the appeal is frivolous or taken solely for the purpose of delay . . . the reviewing court may impose upon the offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

■ The California Supreme Court held that an appeal is frivolous under the above statute "only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it

---

[3]"(a) The effect of a judgment or final order in an action or special proceeding before a court or judge of this state . . . having jurisdiction to pronounce the judgment or order, is as follows: [¶] . . . [¶] (2) In other cases, the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding."

indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].)

■ This appeal meets the *Flaherty* criteria. On our own motion, we notified the parties of our intention to consider the issue of sanctions on appeal against the county, ordered the parties to provide supplemental briefs, and conducted a hearing at which the county was afforded an opportunity to address the issue. (*In re Marriage of Flaherty*, *supra*, 31 Cal.3d at p. 654.)

Having carefully considered the matter, we conclude the county's appeal in this case was brought in bad faith in order to collaterally attack Division Three's conclusive and unfavorable determination of the banking game issue in *Huntington Park*. Moreover, we find that any reasonable attorney would agree that the county's appeal is totally without merit.

The record unequivocally demonstrates that the card clubs were raided without justification, in an ill-advised end run around the *Huntington Park* decision. After the Supreme Court denied the plaintiffs' petition for review in *Huntington Park* on February 23, 1989, this court issued the remittitur on March 17, 1989. However, before the remittitur in *Huntington Park* issued, the county and the sheriff's department took matters into their own hands by raiding the card clubs on December 29, 1988. It is no coincidence that the raid occurred on that date. Division Three filed the *Huntington Park* opinion on November 29, 1988, and the opinion became final 30 days thereafter. (Cal. Rules of Court, rule 24(a).) Prior to the raid, on December 19, 1988, the County Counsel's office informed the Bell Gardens City Attorney that "footnote 6 of the [*Huntington Park*] decision brought into question whether the rotating dealers were banking in violation of Penal Code [section] 330." Also on December 19, 1988, the sheriff's department sent a letter warning the general manager of the Commerce Casino that the sheriff's department would "enforce" the *Huntington Park* decision after it "becomes final at 5 p.m. on December 29, 1988."

The sole legal justification for the raid and this appeal consists of the county's disingenuous interpretation of footnote 6 of the *Huntington Park* decision. The county and the sheriff's department conceded they had no new facts to establish that pai gow is a banking game; they simply contended that footnote 6 of the *Huntington Park* opinion authorized them to ignore Division Three's explicit holding that pai gow is not a banking game.

The superior court's finding that the county and the sheriff's department are barred from relitigating the banking game issue under the doctrine of res

judicata is proper, and any reasonable attorney would agree that the *Huntington Park* holding may not be ignored merely on the basis of footnote 6. The county's position that it is not barred from relitigating the banking game issue can be described as a "nonsensical interpretation of res judicata [which] is a frivolous ground for . . . appeal, making the appeal totally and completely without merit." (*Weber* v. *Willard* (1989) 207 Cal.App.3d 1006, 1010 [255 Cal.Rptr. 165].)

We also conclude this appeal was brought for the improper purposes of harassment and delay. The county's "continuation of the instant litigation by appeal, despite the final . . . judgment against [it], indicates [its] improper purpose is to harass respondents and to delay the practical effect of the . . . judgment in their favor. Repeated litigation of matters previously determined by final judgment constitutes harassment and should be penalized. [Citations.] Even if it can be assumed that appellant conscientiously believes [it] has been aggrieved, the continued misuse of the courts to relitigate matters previously determined cannot be condoned. [Citation.]" (*Weber* v. *Willard*, *supra*, 207 Cal.App.3d at p. 1010.)

We are not alone in our assessment. Three different superior court judges as well as Division Three of this court have ruled against the county on the banking game issue. For example, Judge Lewin's February 17, 1989, minute order reflects an understandable frustration with the county's blatant disregard for judicial process, and states in relevant part: "It taxes credulity to suggest that [Division Three] in *Huntington Park*, upon analysis of the manner in which the [pai gow] games were played, either missed the existence of a 'bank' or was reluctant to make the observation that a 'banking game' was being tolerated, aided or abetted by the Plaintiffs in *Huntington Park*." The consistent superior court and appellate rulings on the banking game issue support our determination that this appeal was brought in bad faith to harass the respondents. (See *Weber* v. *Willard*, *supra*, 207 Cal.App.3d at p. 1010.)

Sanctions must be imposed in order to deter the county from bringing other frivolous appeals for the improper purposes of harassment and delay. If our justice system is to retain any integrity, this type of cynical contempt by government for judicial orders cannot be tolerated. The county must not be permitted to use the judicial process to harass the very citizens it implores to respect the law.

The county should not be treated differently from any other party who misuses the appellate process for frivolous purposes. (See *City of Imperial Beach* v. *Escott* (1981) 115 Cal.App.3d 134, 140 [171 Cal.Rptr. 197]; *People* v. *Hawley* (1932) 119 Cal.App. 548, 551-552 [6 P.2d 976].)

Section 1029 of the Code of Civil Procedure provides that costs shall be awarded against any county "on the same basis as against any other party . . . ." To the extent *Gayer* v. *Whelan* (1943) 60 Cal.App.2d 616 [141 P.2d 514] may be read to the contrary, it is distinguishable. The *Gayer* decision noted the district attorney had acted in good faith and thus the court did not discuss whether costs may be imposed as a penalty for bringing a frivolous appeal. (See *id.* at p. 620.)

We believe that the appropriate measure of sanctions should be based in part on the respondents' costs and attorney's fees. This will serve the purpose of compensating the respondents for the expense of defending against this frivolous appeal. (See *Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 17 [244 Cal.Rptr. 581].)

The respondents' attorneys have submitted detailed line-item compilations of their billings for legal services and costs on appeal. Musick, Peeler & Garrett, which represented respondents the Anthony Company, doing business as the Eldorado Club, and the Normandie Club, seeks legal fees of $33,486.50 and costs of $678.12, for a total of $34,164.62. Simke, Chodos, Silberfeld & Anteau, Inc., and Barash & Hill, which represented respondents Bell Gardens Bicycle Club and Commerce Club, seek their respective legal fees of $44,890 and $55,892.50, plus costs of $159.12 each, for the respective totals of $45,049.12 and $56,051.62.

We find that the appropriate sums for defending against this appeal are $34,164.62, $45,049.12 and $56,051.62. We note that the county has to date failed to dispute or protest the line-item compilations submitted by respondents' attorneys at our request. Therefore, we award respondents sanctions in the amounts requested, payable to their attorneys, and assess that amount to the county.[4]

Because the facts of this case are particularly egregious, we further determine that an award of additional sanctions is proper. (See *National Secretarial Service, Inc.* v. *Froehlich* (1989) 210 Cal.App.3d 510, 526 [258 Cal.Rptr. 506].) "It is perhaps time that the courts, both trial and appellate, begin to speak and react more forcefully with respect to cases such as this one. Such an abuse of the legal system for no other purpose than to avoid [the conclusive judgment of a state court] simply can no longer be tolerated.

---

[4]We assess sanctions against the county only, and not against its attorneys. Nothing in this opinion should be interpreted as a personal criticism or disparagement of Mr. Brazile, the deputy county counsel. At oral argument, respondents' attorneys attested to this court that Mr. Brazile has been a straightforward and professional opponent throughout their many years of litigating this matter. We do not hold Mr. Brazile personally responsible for the county's decision to pursue this appeal.

It is not fair to the opposing litigant who is victimized by such tactics and it is not fair to the greatly overworked judicial system itself and those citizens with legitimate disputes waiting patiently to use it." (*Ibid.*, fn. omitted.)

We find that the county should be made to pay additional sanctions "[i]n order to reimburse the taxpayers victimized by this unremittingly frivolous litigation and to deter such conduct in the future . . . ." (*Bank of California* v. *Varakin* (1990) 216 Cal.App.3d 1630, 1640 [265 Cal.Rptr. 666].) The additional burden imposed by this frivolous appeal has caused a "wasteful diversion of an appellate court's limited resources" and has prejudiced "[o]thers with bona fide disputes . . . ." (*Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96, 136 [260 Cal.Rptr. 369].)

In calculating the amount of additional sanctions, we seek not only to reimburse the taxpayers for the cost of processing this appeal, but also to deter future frivolous litigation by the county. In 1989, Division Four of the First District Court of Appeal determined, based on a conservative estimate, that "the cost to the taxpayers to process an average civil appeal currently is approximately $2,324." (*Finnie* v. *Town of Tiburon, supra,* 199 Cal.App.3d at p. 17.) While this conservative estimate has been accepted by other appellate courts (see, e.g., *Summers* v. *City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1080 [275 Cal.Rptr. 594]), the cost has since been estimated at a conservative $3,995 (see, e.g., *Alicia T.* v. *County of Los Angeles* (1990) 222 Cal.App.3d 869, 886 [271 Cal.Rptr. 513]). But an appellate court is not limited to reimbursing taxpayers' costs. In 1989, for example, Division Three of this district imposed additional sanctions far in excess of $3,995 for the prosecution of a particularly "costly, time-consuming and frivolous appeal." (*Young* v. *Rosenthal, supra,* 212 Cal.App.3d at p.$4x136.) In that case, the court ordered the appellant to pay $20,000 in additional sanctions to the clerk of this court. (*Id.* at p.$4x137.)

We believe that the outrageous nature of this case warrants the imposition of a far greater penalty than $3,995 in order to deter future conduct of this nature. We are particularly troubled by the county's unbridled abuse of its police power to circumvent the authority of the judicial system, and thus feel compelled to impose a substantial amount. On the other hand, we also feel compelled by the county's current budgetary constraints to impose far less than we otherwise would deem appropriate. After weighing these factors, we have decided to order the county to pay the sum of $25,000 to the clerk of this court as additional sanctions. The clerk of this court is directed to deposit this sum in the general fund.

## DISPOSITION

The judgment is affirmed. Sanctions are imposed against the County of Los Angeles payable as follows:

(1) the sum of $34,164.62 (inclusive of costs), payable to Musick, Peeler & Garrett, which represented respondents the Anthony Company, doing business as the Eldorado Club, and the Normandie Club;

(2) the sums of $45,049.12 (inclusive of costs), payable to Simke, Chodos, Silberfeld & Anteau, Inc., and $56,051.62 (inclusive of costs), payable to Barash & Hill, for their joint representation of respondents Bell Gardens Bicycle Club and Commerce Club; and

(3) the sum of $25,000 payable to the clerk of this court.

The clerk of this court is directed to deposit the $25,000 in the state's general fund.

Vogel, J., and Nott, J.,* concurred.

---

*Associate Justice of the Court of Appeal, Second District, Division Two, sitting under assignment by the Chairperson of the Judicial Council.