[No. B113027. Second Dist., Div. Three. Sept. 30, 1998.]

VINCENT OLIVER, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent;
HELIX INFORMATION SERVICES, INC., et al., Interveners and
Appellants.

1398

**COUNSEL**

David E. Kronemyer for Plaintiff and Appellant.

Dressler, Rein, Evans & Sestanovich, Thomas W. Dressler and Scott J. Rein for Interveners and Appellants.

De Witt W. Clinton, County Counsel, S. Robert Ambrose, Assistant County Counsel, Kevin C. Brazile, Principal Deputy County Counsel, Greines, Martin, Stein & Richland, Martin Stein and Barry M. Wolf for Defendant and Respondent.

## OPINION

CROSKEY, J.—Plaintiff Vincent Oliver (plaintiff) and plaintiffs in intervention Helix Information Services, Inc., and Michael Hesse (Helix and Hesse, respectively, or interveners) appeal from a summary judgment entered in favor of defendant County of Los Angeles (the County). In deciding the various motions for summary judgment filed by the parties, the trial court determined that a card game called "Newjack," which was invented by plaintiff, is a form of another card game called "21."[1] Penal Code section 330 prohibits the playing of 21 for money.[2] Plaintiff and the interveners had filed complaints seeking declaratory and injunctive relief which would permit them to market, to gambling businesses, the Newjack game. The trial court denied such relief and ruled Newjack cannot be played legally as a wagering game.

"[Newjack] is not one of the games specifically mentioned in section 330. The question of its legality or illegality thus depends upon whether it qualifies as either a banking or a percentage game. This is an issue of law. [Citations.]" (*Sullivan* v. *Fox* (1987) 189 Cal.App.3d 673, 678 [235 Cal.Rptr. 5].)

We find the trial court was correct when it concluded Newjack is prohibited by section 330. While the rules of Newjack demonstrate it is not a percentage game, the rules also show the game has *the potential* of being

---

[1] "Blackjack" is another name for the game of "21."

[2] Penal Code section 330 (section 330) states: "Every person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noire, rondo, tan, fan-tan, seven-and-a-half, twenty-one, hokey-pokey, or any banking or percentage game played with cards, dice, or any device, for money, checks, credit, or other representative of value, and every person who plays or bets at or against any of those prohibited games, is guilty of a misdemeanor, and shall be punishable by a fine not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000), or by imprisonment in the county jail not exceeding six months, or by both the fine and imprisonment."

played as a banking game. ▮▮▮▮ We therefore affirm the summary judgment entered in favor of the County.[3]

## BACKGROUND OF THE CASE

The operative complaints of plaintiff and the interveners collectively allege the following matters. Plaintiff is the inventor of Newjack. He and Helix own rights to commercially distribute the game. Hesse is the co-owner of Newjack and coholder of patent rights to it. At least two cities in Southern California (Bell and Gardena) have given their permission to have Newjack played at gambling casinos therein because the cities determined the rules of Newjack do not violate section 330. Thus, Newjack began to be played in card clubs. Thereafter, opinion letters were issued by county counsel's office and the state Attorney General's office which state Newjack violates section 330. The County's sheriff's department obtained a search warrant to search businesses where Newjack was being played and seize objects there. In the face of this activity, playing of Newjack has ceased. This has disrupted plaintiff's and interveners' rights to market and exploit Newjack and they have suffered negative economic consequences. The respective complaints pray for declaratory relief that playing Newjack does not violate section 330, as well as temporary, preliminary and permanent injunctive relief.

Plaintiff, Helix, and the County each filed a motion for summary judgment. At the hearing on the respective motions, the trial court denied plaintiff's and Helix's motions and granted the County's motion. Although the court determined that Newjack is not a percentage or banking game, it concluded Newjack violates section 330 because the rules of Newjack are "sufficiently similar to the prohibited game of 21" to make the distinctions between the two games inconsequential. Thereafter, judgment in favor of the County was signed and filed and plaintiff and the intervenors filed timely appeals from such judgment.

---

[3]Plaintiff and the interveners contend the doctrine of collateral estoppel requires reversal of the summary judgment and entry of a summary judgment in their favor. The basis of their position is a criminal prosecution in the County in which the defendant was charged with violating section 330 because he permitted Newjack to be played in his casino. The defendant's demurrer to the charge was sustained and the case was dismissed.

Assuming arguendo that all of the elements for application of collateral estoppel are met in the instant case (*People* v. *Taylor* (1974) 12 Cal.3d 686, 691 [117 Cal.Rptr. 70, 527 P.2d 622]), an issue strongly debated by the County, we decline to apply that doctrine. "Generally, collateral estoppel bars the party to a prior action, or one in privity with him, from relitigating issues finally decided against him in the earlier action. [Citation.] '. . . But when the issue is a question of law rather than of fact, the prior determination is not conclusive either if injustice would result or if the public interest requires that relitigation not be foreclosed. [Citations.] . . . .' [Citation.]" (*City of Sacramento* v. *State of California* (1990) 50 Cal.3d 51, 64 [266 Cal.Rptr. 139, 785 P.2d 522].) Here, strong public interest in the regulation of gambling requires that we examine for ourselves the legality of the game of Newjack.

## Discussion

### 1. *Standard of Review*

We conduct a de novo review of this matter. (*Price* v. *Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 474 [261 Cal.Rptr. 735].) In doing so, we apply the same rules the trial court was required to apply in deciding the County's motion for summary judgment. Those rules are as follows. As a defendant moving party, the County had the burden of presenting evidence which shows that plaintiff's and the interveners' causes of action have no merit. The County could do this with evidence sufficient to show that (1) one or more elements of each cause of action cannot be established, or (2) there are complete defenses to those causes of action. (Code Civ. Proc., § 437c, subd. (o)(2).) If the County accomplished this, then the burden shifted to plaintiff and the intervenors to show that, contrary to the County's presentation, a triable issue of material fact actually exists as to those causes of action or defenses. (*Ibid.*) Thus, section 437c, subdivision (c), states that summary judgment is properly granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Because a summary judgment denies the adverse party a trial, it should be granted with caution. (*Michael J.* v. *Los Angeles County Dept. of Adoptions* (1988) 201 Cal.App.3d 859, 865 [247 Cal.Rptr. 504].) Declarations of the moving party are strictly construed, those of the opposing party are liberally construed, and doubts as to whether a summary judgment should be granted must be resolved in favor of the opposing party. The court focuses on issue finding; it does not resolve issues of fact. The court seeks to find contradictions in the evidence, or in inferences reasonably deducible from the evidence, which raise a triable issue of material fact. (*Id.* at pp. 865-866.) If, in deciding this appeal, we find there is no issue of material fact, we affirm the summary judgment if it is correct on any legal theory applicable to this case, whether or not that theory was adopted by the trial court, and whether it was raised by the County in the trial court or first addressed on appeal. (*Western Mutual Ins. Co.* v. *Yamamoto* (1994) 29 Cal.App.4th 1474, 1481 [35 Cal.Rptr.2d 698].)

The facts of this case are straightforward. They involve the published rules of Newjack. As noted above, the question whether Newjack is prohibited by section 330 depends on whether the game qualifies as either a banking or a percentage game, and this is an issue of law. (*Sullivan* v. *Fox, supra,* 189 Cal.App.3d at p. 678 (*Sullivan*).)

## 2. *Types of Games Prohibited by Section 330*

■ "Section 330 embodies several differing approaches to gambling regulation. Those games specifically mentioned are banned outright. Rather than undertaking numerous piecemeal amendments every time a new game is deemed worthy of prohibition, the Legislature adopted the 'banking or percentage game' test as a flexible means of reaching two evils perceived by the Legislature." (*Sullivan, supra,* 189 Cal.App.3d at p. 679.) "[A] card game played for money not specifically listed under section 330 and not played as a banking or percentage game is not prohibited. [Citations.]" (*Tibbetts* v. *Van de Kamp* (1990) 222 Cal.App.3d 389, 393 [271 Cal.Rptr. 792].)

■ "Banking game has come to have a fixed and accepted meaning: the 'house' or 'bank' is a participant in the game, taking on all comers, paying all winners, and collecting from all losers. [Citations.]" (*Sullivan, supra,* 189 Cal.App.3d at p. 678.) "[T]he house is actually involved in play, its status as the ultimate source and repository of funds dwarfing that of all other participants in the game." (*Id.* at p. 679.)

"[A percentage game] finds the house in a more passive role. Where the house is not directly participating in game play, it can still be involved if it collects a percentage from the game. This percentage may be computed from the amount of bets made, winnings collected, or the amount of money changing hands. The percentage may be assessed collectively or individually. Regardless of the precise formula employed, the house benefits. The house has no interest in the outcome of play, but it is far from disinterested in the amount of play. It is in the enviable position of obtaining profit without incurring risk of loss from the actual play. Its actual participation is nil, thereby distinguishing it from the banking game situation, but it nevertheless gains. . . . [¶] We construe the language in section 330 referring to percentage game as encompassing any game of chance from which the house collects money calculated as a portion of wagers made or sums won in play, exclusive of charges or fees for use of space and facilities. [Citation.]" (*Sullivan, supra,* 189 Cal.App.3d at p. 679.)

Section 330 was enacted in 1872. According to expert testimony in *Tibbetts* v. *Van de Kamp, supra,* 222 Cal.App.3d at page 393, ". . . the common thread among the games specifically listed in section 330 at the time of its enactment was that they were casino games, i.e., banking or percentage games, which were deemed especially 'suspect' because, among other reasons, the house had an advantage and limitless funds." "Apparently, the evil sought to be controlled by section 330 is the house having an interest in the game, whether through acting as banker or taking a percentage of the

wagers. [Citations.]" (*Walker* v. *Meehan* (1987) 194 Cal.App.3d 1290, 1296 [240 Cal.Rptr. 171].)

### 3. *Newjack's Status as a Banking Game or Percentage Game*

#### a. *General Playing Rules for Newjack*

According to the published rules for Newjack, in each hand of the game there is a player designated as the "dealer" (hereinafter, the player-dealer). All the other players are the "opponents" of the player-dealer. The player-dealer is not the same as the "house dealer." The latter is an employee of the casino and his or her job is to deal the cards and settle bets. The opponents wager against the player-dealer and try to beat him or her. The player-dealer is permitted to bet as much as he or she wishes, even if this is over the table limit, but the player-dealer does not have to bet a sufficient amount to cover the wagers of the opponents. If the player-dealer does not place a sufficient wager to cover the bet of an opponent, the opponent's wager is returned to him or her and the opponent receives a button which is good for a free "collection," unless the opponent "gets action on any portion of his bet, in which case no free collection is given."[4]

The object of the game of Newjack is to hold a hand of cards having a collective value as close to, but no greater than, 22 points. Each card has a specific point value. Thus, an ace has a value of 1; a 2 has a value of 2 or 12, according to the choice of the person holding the card; cards 3 through 10 each have a value equal to the face number of the card; and the jack, queen, and king each have a value of 10.

A player-dealer or an opponent with a starting hand of two cards, where one of the cards is a 2 and the other card has a value of 10, wins the hand, unless the other person also has such a hand; then neither wins. Such a hand is called a Newjack. If only the opponent has the Newjack, he or she wins his or her wager plus a bonus payoff ($2 for every $5 wagered). If the player-dealer has a Newjack, he or she wins all original bets, except as against another person with a Newjack. If both the player-dealer and an opponent have cards totaling under 22, the person with the hand value closest to 22 wins; but if they have the same hand value, they tie. If a player-dealer or opponent goes over 22 but the other does not, the other wins. If the player-dealer and opponent are both over 22, the player-dealer wins unless they tie in hand value; then neither wins and the opponent gets his or her wager back.

---

[4]According to the published rules for Newjack, a "collection" is a fee paid to the house by the player-dealer and each opponent for every hand played.

### b. *Newjack Is Not a Percentage Game*

■ As noted above, each player-dealer and each opponent must pay a collection fee to the house for each hand played. The collection is a fixed amount based on the table limits. According to the rules, "Everyone at a table pays the same collection, no matter how much a player wagers within the table limits." However, if a player makes more than one bet on a hand, he or she must pay a collection for each bet. "Three bets of up to the table-maximum may be made for each hand. For example, on a $5-$50 limit table, three bets of $50 may be made on a hand, and three collections would be required. [¶] If a player makes more than one bet on a hand, he must have a separate bet on each betting spot. For example, on a $5-$50 limit table, a player may not make two $50 bets with a single $100 chip. The chip must be changed into two separate bets of $50."

It has been held there is no percentage game if the house charges a gambler a "facility" fee, such as a fee for space used or a fee based on the gambler's playing time. (*Huntington Park Club Corp.* v. *County of Los Angeles* (1988) 206 Cal.App.3d 241, 249 [253 Cal.Rptr. 408] (*Huntington Park*).) Does the formula used in Newjack for compensating a casino fit the *Sullivan* description of a percentage game, or is it more akin to a facilities fee? As we noted earlier, the *Sullivan* court construed the term "percentage game" "as encompassing any game of chance from which the house collects money calculated as a portion of wagers made or sums won in play, exclusive of charges or fees for use of space and facilities." (*Sullivan, supra,* 189 Cal.App.3d at p. 679.)

Although the "collection" taken from a player in the game of Newjack is based on the limits of the table, it is a flat fee. Moreover, each player is charged the same "collection" per bet. This indicates the collection is *not* based on a *percentage* of the amount of money actually being utilized in the game (i.e., total played, total won, total lost, etc.). Thus, Newjack's formula for compensating the casino does not fit within the *Sullivan* definition of a percentage game. It is true that a collection is required of a player for each bet made by him or her in a hand, and a player can receive a collection waiver if the player-dealer does not bet sufficient money to cover that player's wager. It therefore is also necessarily true that "the house [can] benefit[]" from the amount of money being wagered in any one game and the house "is far from disinterested in the amount of play" per hand. (*Sullivan, supra,* 189 Cal.App.3d at p. 679.) However, because we cannot say that these collections constitute "a portion of wagers made or sums won in play" (*ibid.*), we must conclude Newjack is not a percentage game under the *Sullivan* test. ■ When a statute has been judicially construed, such as

*Sullivan* construed section 330's use of the term "percentage game," that construction becomes part of the statute. (*Huntington Park, supra,* 206 Cal.App.3d at p. 248.)

### c. *Newjack Is a Banking Game*

■ A "banking game" is one in which "the 'house' or 'bank' is a participant in the game, taking on all comers, paying all winners, and collecting from all losers. [Citations.]" (*Sullivan, supra,* 189 Cal.App.3d at p. 678.) "[T]he house is actually involved in play, its status as the ultimate source and repository of funds dwarfing that of all other participants in the game." (*Id.* at p. 679.)

This description of a casino as an entity that (1) participates in the gambling game, and (2) covers all bets made in the game, does not coincide with the published rules of Newjack. According to those rules, the casino's house dealer does not participate in the play of the game; the house dealer's duties are limited to dealing cards and settling bets. The casino, whether through the house dealer or otherwise, does not place wagers on the game. It does not profit from losers and it does not pay off on bets; in short, it is not covering bets. The casino's sole source of income is the "collection" fee. Thus, on the face of these rules, the casino does not operate as a bank for the game of Newjack. However, there are other Newjack rules which indicate Newjack can nevertheless *be played as a banking game.*

In *Huntington Park, supra,* 206 Cal.App.3d at page 250, footnote 6, we observed that the facts of that case did not require us to answer the question whether a gambling game can be a banking game "if a person other than the 'house' were to maintain and operate the 'bank.'" The rules of Newjack respecting player-dealers require us to answer the question now. The sticking point in those rules is the directives governing the rotation of the position of player-dealer. Those rotation rules make it possible for a player-dealer to function as a bank.

Under the rules of Newjack, the players each have the option to be the player-dealer for two consecutive hands. After the two consecutive hands, the option passes to the player on the immediate left. A player can decline to be a player-dealer, and the option keeps passing to the left until a player accepts the option. A player can only be a player-dealer for more than two consecutive hands if all the other players at the table decline to be player-dealer. Plaintiff and the interveners contend these rules keep Newjack from being a banking game. They argue that under the rules, not only does the

player-dealer not have to cover all bets,[5] he or she also does not have exclusive possession of the role of player-dealer and thus does not have exclusive possession of the advantage which is inherent (under the Newjack rules of play) in being the player-dealer.[6] Moreover, contend plaintiff and the interveners, evidence submitted by the County in its summary judgment papers shows that the advantage of the player-dealer position does not constantly remain with a single person. The County submitted declarations from two members of the County's sheriff's department. According to these declarants, they participated in or observed the play of more than 50 games of Newjack at various casinos in the County. According to these deputies, "there were numerous instances" where players would decline their opportunity to be the player-dealer and the result would be that one player would continuously act as the player-dealer for many games. "Generally, when one (1) player had a large amount of money, the other players would repeatedly pass being the [player-dealer] so that the person with a large amount of money [would retain the position of player-dealer] for several hands. Once the person with a large amount of money . . . exhausted his or her funds, then the [player-dealer position] would rotate to another player." Plaintiff and the interveners assert these declarations show that Newjack was being played according to its rules and the advantage position of player-dealer does not continuously rest in a single person with unlimited funds.

We do not agree with plaintiff's and the interveners' position. It is the *potential* for a banked game under Newjack's rules, and not the current mode of play, which determines whether Newjack is a banking game. In *Huntington Park*, we concluded that under the facts of that case, the game of pai gow could legally be played because the record did not establish that a bank was being maintained in the playing of that game. (*Huntington Park, supra*, 206 Cal.App.3d at p. 250.) In the instant case, we expand this analysis and we now hold that a game will be determined to be a banking game if under the rules of that game, it is possible that the house, another entity, a player, or an observer can maintain a bank or operate as a bank during the play of the game. In *Huntington Park*, the trial court observed that the position of player-dealer in pai gow " 'continually and systematically rotates among each of the participants.' " (*Id.* at p. 245.) However in Newjack, the player-dealer position does not *have* to rotate among the players. If the other players

---

[5]While it is true that player-dealers are not required to cover any and all bets with their own funds since their financial exposure is limited to the amount of money they are willing to bet on any given hand, the player-dealers *do* participate in the game and they *do* have an interest in its outcome, which are traits of a banking game. (*Sullivan, supra*, 189 Cal.App.3d at pp. 678, 679.)

[6]As noted above, the Legislature found banking games suspect because (1) the house has an advantage in the player position it chooses for itself, and/or (2) the house has seemingly unlimited funds.

decline to accept the player-dealer position, one player can act as a player-dealer for repeated hands and such a player need not go broke after a few hands. A player with a significant amount of money to bet can hold the position of player-dealer for a long time, and thus keep the inherent playing advantage for him or herself. The effect would be a banked game because it could then be said of such a player that he or she is "taking on all comers, paying all winners, and collecting from all losers." (*Sullivan, supra,* 189 Cal.App.3d at p. 678.) Because the rules permit such an occurrence, we hold Newjack is a banking game and therefore, as presently constituted, prohibited under section 330. Therefore, the summary judgment granted to the County must be affirmed.

## DISPOSITION

The judgment from which plaintiff and interveners have appealed is affirmed. Costs on appeal to the County.

Klein, P. J., and Goodman, J.,* concurred.

A petition for a rehearing was denied October 30, 1998, and the petition of appellant Vincent Oliver for review by the Supreme Court was denied December 22, 1998. Kennard, J., Baxter, J., and Werdegar, J., were of the opinion that the petition should be granted.

---

*Judge of the Municipal Court for the Culver Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.