[No. E024437. Fourth Dist., Div. Two. June 19, 2000.]

NORTHLAND INSURANCE COMPANY, Plaintiff and Respondent, v. DANIEL BRIONES, JR., Defendant and Appellant.

## COUNSEL

Bruggeman, Smith & Peckham and Raymond F. Dolen for Defendant and Appellant.

McKay, Byrne & Graham, Paul A. de Lorimier and Debra Ellwood Meppen for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, J.**—Plaintiff Northland Insurance Company brought this declaratory relief action to obtain a judicial interpretation of its rights under a mobilehomeowners policy it had issued to defendant Daniel Briones, Jr.

The policy provided personal liability coverage in the event suit was filed against the insured for damages because of bodily injury or property damage. However, the policy specifically applied "only to accidents, occurrences, and loss during the policy period shown on Page One while YOUR mobile home and unattached structures are within the United States . . . ."

An endorsement to the policy provides that physical/sexual abuse is not covered by the policy: "This insurance does not apply to any 'bodily injury,' 'property damage,' 'personal injury,' or 'medical expense' arising out of: [¶] 1. Physical abuse, sexual abuse, sexual molestation or sexual harassment by anyone . . . . [¶] . . . [¶] This exclusion applies whether damages arise from an insured's act or failure to act."

The declaratory relief complaint alleges that defendant Briones had been sued for personal injury damages in an action filed in Riverside Superior

Court by Connie L., a minor, and her parents (herein the underlying action). The complaint in the underlying action alleged that Connie L. was a 15-year-old resident at the California School for the Deaf in Riverside, and that defendant Briones was her karate instructor. A cause of action for assault and battery alleged that defendant repeatedly and intentionally raped Connie L. and systematically stalked her. A second cause of action for negligence alleged that other defendants were negligent in not preventing defendant Briones from stalking, assaulting and raping Connie L. A third cause of action accused other defendants of negligent hiring and supervision of defendant Briones. The fourth and fifth causes of action were against the State of California, which operates the California School for the Deaf, for intentional and negligent infliction of emotional distress.

The declaratory relief complaint alleged that defendant Briones claimed that Northland had a duty under the homeowners policy to defend the underlying action, and to indemnify him in the event of a settlement or judgment against him. Northland alleged it had no duty to defend or indemnify Mr. Briones.

Northland reiterated its contentions in a summary judgment motion. It asserted that there was no coverage because the conduct alleged in the underlying action was intentional sexual misconduct and harassment, and that the sexual abuse exclusion made it clear that there was no coverage for such misconduct. Northland also alleged that there was no "accident or occurrence" within the meaning of the policy provision quoted above.

In addition to these specific policy provisions, the insurance company contended that Insurance Code section 533 should be read into the policy. Under that section, an insurer is not liable for a loss caused by the willful act of the insured.

The trial court agreed with the first two contentions and granted the summary judgment motion. It specifically found that (1) there was no accident or occurrence within the meaning of the policy; and (2) the conduct alleged in the underlying action was clearly excluded from policy coverage by the sexual abuse exclusion.

Defendant Briones appeals.

### STANDARD OF REVIEW

Code of Civil Procedure section 437c, subdivision (c), provides: "The motion for summary judgment shall be granted if all the papers submitted

show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ■ Our review is a de novo review. (*Milazo v. Gulf Ins. Co.* (1990) 224 Cal.App.3d 1528, 1534 [274 Cal.Rptr. 632].) "On appeal from a summary judgment, the reviewing court is not bound by the trial court's construction of a contract where that construction was not based on the credibility of conflicting extrinsic evidence as to which the trial court was in a better position to form a judgment. Thus, where there is no extrinsic evidence, where the extrinsic evidence is not conflicting or where the conflicting evidence is of a written nature only, the reviewing court is not bound by the rulings of the trial court but rather must make an independent interpretation of the written contract. [Citations.]" (*Id.* at p. 1534.)

■ In the insurance context, this means that " '[t]he trial court must decide if a triable issue of fact exists. If none does, and the sole remaining issue is one of law, it is the duty of the trial court to determine the issue of law.' [Citation.] [¶] On appeal, this court must conduct de novo review to determine whether there are any triable factual issues. [Citation.] Likewise, because the 'interpretation of an insurance policy is a question of law, [we must] make an independent determination of the meaning of the language used in the contract under consideration.' [Citation.]" (*Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1481 [35 Cal.Rptr.2d 698]; see also *Milazo v. Gulf Ins. Co., supra,* 224 Cal.App.3d 1528, 1534.)

### THE ALLEGED ERROR OF THE TRIAL COURT IN PROCEEDING TO DECIDE NORTHLAND'S SUMMARY JUDGMENT MOTION

1. *The Contention.*

■ Defendant Briones first contends he was prejudiced by having to choose between asserting his privilege against self-incrimination in the underlying action and fully opposing the motion for summary judgment. He bases this contention on the theory that the complaint in the underlying action charged him with criminal conduct, e.g., rape, as well as allegations that Connie L. was injured by his negligent acts. Because of the possibility of criminal charges, he alleges that he was required to invoke his Fifth Amendment right against self-incrimination when his deposition was taken in the underlying action. As a result, he was unable to make factual statements which inferentially would have impacted on the duty to defend. He therefore argues that, since a summary judgment motion in this situation can consider extrinsic evidence as well as the allegations of the complaint in the underlying action, the trial court erred in deciding the summary judgment motion on the face of the complaint in the underlying action without staying the action until he could freely provide the requisite extrinsic evidence.

In 1998, shortly after defendant Briones filed his answer to the declaratory relief complaint, he filed a motion to stay the proceedings until the facts were determined in the underlying action. The trial court denied the motion but ordered all discovery addressed to defendant Briones stayed. Thus, when the summary judgment motion was filed a month later, Northland addressed the issues raised by the complaint in the underlying action. It thus relied on the general rule that "[t]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].) However, the Supreme Court goes on to state: "Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." (*Ibid.*)

Mr. Briones inferentially argues that, had he been freely able to testify, he could have supplied some extrinsic facts that would have shown the existence of a duty to defend. Since he could not testify without fear of incriminating himself, he argues the trial court erred in proceeding to grant the summary judgment motion on the basis of the allegations of the complaint itself. In other words, he argues that "[i]t was gross error of the trial court to basically assume that this defendant could not possibly have anything to say that would affect the decision of the court concerning the issue of coverage."

Mr. Briones relies on *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287 [24 Cal.Rptr.2d 467, 861 P.2d 1153]. *Montrose* discussed the use of extrinsic evidence in the context of an adjudication of the insurer's duty to defend its insured in an underlying third party lawsuit. ▮ After discussing the nature of the duty to defend, our Supreme Court noted that the prior case of *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168] "made clear that facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy. [Citation.] This is so because current pleading rules liberally allow amendment; the third party plaintiff cannot be the arbiter of coverage." (*Montrose Chemical Corp.*, at p. 296.) Thus, considered in the context of a declaratory relief action seeking a coverage adjudication, the principle is simple: "To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential.*" (*Id.* at p. 300, original italics.)

In some situations a stay of the declaratory relief action is appropriate until the facts are determined in the underlying action. Mr. Briones relies on the discussion of this point in *Montrose*: "To eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the

declaratory relief action pending resolution óf the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action. [Citations.] For example, when the third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct, the potential that the insurer's proof will prejudice its insured in the underlying litigation is obvious. This is the classic situation in which the declaratory relief action should be stayed. By contrast, when the coverage question is logically unrelated to the issues of consequence in the underlying case, the declaratory relief action may properly proceed to judgment." (*Montrose Chemical Corp. v. Superior Court, supra,* 6 Cal.4th 287, 301-302.)

## 2. *The Issue.*

The issue thus presented by defendant's argument is whether there was a risk of inconsistent factual determinations in this case. In other words, "[s]tay of a declaratory relief action to determine coverage is often in order when the coverage question turns on facts to be litigated in the underlying third party action . . . . [Citation.]" (*David Kleis, Inc. v. Superior Court* (1995) 37 Cal.App.4th 1035, 1044 [44 Cal.Rptr.2d 181].) In order to determine the issue here, we first proceed to compare the allegations of the complaint in the underlying action with the terms of the policy. (*Id.* at p. 1045.) We then consider whether the coverage question turns on facts to be litigated in the underlying action, and whether the deposition testimony of Mr. Briones could affect that determination. Finally, we consider whether there was a possibility of prejudice to Mr. Briones from possibly inconsistent factual determinations. (*Montrose Chemical Corp. v. Superior Court, supra,* 6 Cal.4th 287, 301.)

## 3. *A Comparison of the Allegations of the Complaint with the Terms of the Policy.*

By the time the summary judgment motion was heard, the plaintiffs in the underlying action had filed a first amended complaint. Although some defendants were dropped, the first cause of action continued to allege that Mr. Briones "intentionally assaulted and raped Plaintiff Connie [L.] on numerous occasions" and that he "intentionally engaged in a systematic practice of stalking Plaintiff Connie [L.]." The second cause of action continued to allege negligence by the State of California and a school employee in providing an environment in which Connie L. would be free from sexual assault, and negligence in failing to protect her from assault by Mr. Briones. The earlier allegations that Mr. Briones raped, assaulted,

stalked, and harassed Connie L. are also repeated. Mr. Briones was not named in the third cause of action which alleged negligent hiring and supervision by the State of California. He was also not named in the fourth and fifth causes of action for alleged negligent and intentional infliction of emotional distress, respectively.

A sixth cause of action was added in the first amended complaint. It is directed solely at Mr. Briones and it alleges that he negligently inflicted emotional distress on Connie L. Five specific paragraphs allege: (1) Mr. Briones was her karate instructor, and that "[b]y spending an inordinate amount of time with Plaintiff" he "negligently caused their relationship to become far more intense than that of teacher-student"; (2) Mr. Briones "negligently interfered with the familial relationship" and negligently inter-fered with parental rights "by spending time with and negligently engaging in sexual intercourse with Plaintiff CONNIE [L.]"; (3) As Connie L.'s karate instructor, Mr. Briones "negligently made contact with" her private areas and "negligently engaged in sexual relations" with her; (4) Mr. Briones touched her breast while negligently teaching her how to perform a breast self-examination and (5) Mr. Briones negligently caused her emotional distress by being flirtatious with her, hugging and touching her in front of other students, and inundating her with various communications "in an effort to discuss their relationship and the status thereof."

When these allegations are compared to the terms of the policy set forth above, it is clear that all of the alleged physical injuries arose from the alleged sexual misconduct of Mr. Briones. Thus, for the reasons discussed below, we conclude that, based solely on the allegations of the complaint, the homeowner's policy did not provide coverage for the alleged sexual molestation or sexual harassment.

4. *The Potential Extrinsic Evidence: The Facts to Be Litigated in the Underlying Action and the Potential Deposition Testimony of Mr. Briones.*

The next question is whether the coverage issue could potentially be affected by litigation of these issues in the underlying action, or by the testimony of Mr. Briones on these issues. In other words, as noted above, the insurer must establish the absence of any potential for coverage in order to prevail. (*Montrose Chemical Corp. v. Superior Court, supra,* 6 Cal.4th 287, 300.)

We are unable to discern any potential issue in the underlying action which would give rise to a duty to defend. ▮ "It is by now a familiar principle that a liability insurer owes a broad duty to defend its insured

against claims that create a potential for indemnity. (*Gray v. Zurich Insurance Co.*[, *supra*,] 65 Cal.2d 263 . . . .) As we said in *Gray*, 'the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.' [Citation.] Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. [Citations.] [¶] The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. [Citation.]" (*Horace Mann Ins. Co. v. Barbara B., supra,* 4 Cal.4th 1076, 1081.) The issue thus becomes whether there are potentially any extrinsic facts which show a possibility of a covered claim.

Mr. Briones apparently argues that the underlying action could potentially be resolved by a finding of negligence on his part, and that such a finding would eliminate the insurer's argument that the insurer was not liable because his conduct was willful and intentional misconduct. It also appears that his argument applies to his potential deposition testimony because he might testify that all of his conduct was negligent and not intentional misconduct.

The difficulty with the argument is that our Supreme Court has clearly declared that "child molestation is *always* intentional, it is *always* wrongful, and it is *always* harmful." (*J. C. Penny Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1025 [278 Cal.Rptr. 64, 804 P.2d 689].) There is simply no such thing as "unintentional child molestation," "negligent harassment," "negligent stalking" or "accidental intercourse." Thus, as discussed more fully below, the issue to be determined in the underlying action was simply whether Mr. Briones had caused bodily injury to Connie L. by sexually molesting and harassing her. Whether the allegations are true or not, there was no duty to defend because, in view of the sexual misconduct exclusion, there was no potential for coverage.

5. *The Conclusion: There Is No Possibility for Prejudice.*

 We therefore conclude that Mr. Briones has failed to show the possibility of extrinsic evidence that would show a potential for coverage under the policy. Thus, there was no duty to defend the claims made in the underlying action. Since there was no possible extrinsic evidence, it is apparent that Mr. Briones was not prejudiced when he had to claim his right against self-incrimination in his deposition. Nor has he shown that there was a possibility of inconsistent factual determinations between the declaratory

relief action and the underlying action. We therefore conclude the trial court properly denied the request of Mr. Briones to stay the action, including the summary judgment motion, until the underlying action was decided.

### ALLEGED ERROR IN FINDING NO COVERAGE

██ Mr. Briones next contends the trial court erred in concluding that there were no allegations in the underlying action that fell outside the sexual abuse exclusion of the insurance policy. He argues that there was a possibility of coverage for negligent acts which caused injury because some of the acts were alleged as negligent acts.

Mr. Briones first claims that the allegations of rape and assault are gross exaggerations because Connie L. admitted in her deposition that all the sex was consensual. Second, he points out that Connie L.'s parents are plaintiffs and the "parents also allege that the defendant caused them all mental distress by a number of different negligent acts that have nothing to do with sexual relations."[1] Third, he claims that the allegations of negligent touching of her breast constituted battery, not sexual contact, as did allegations of negligent touching during karate lessons.

We start with the proposition that there is no such thing as negligent or even reckless sexual molestation. (*J. C. Penny Casualty Ins. Co. v. M. K.*, *supra*, 52 Cal.3d 1009, 1025.) In *J. C. Penny*, a man who molested a child was ordered to pay $500,000 to the child and her mother in a civil action. The mother and child then sought to recover the judgment from the molester's insurance company. The insurance company had issued a comprehensive homeowners policy, including liability coverage, to the molester. The insurance company refused to pay the claim, arguing that, under the language of the policy and Insurance Code section 533, it was not required to pay a judgment resulting from the intentional conduct of its insured. (*J. C. Penny Casualty Ins. Co.*, at pp. 1014-1015.)

Our Supreme Court agreed, and found there was no coverage as a matter of law. (*J. C. Penny Casualty Ins. Co. v. M. K.*, *supra*, 52 Cal.3d 1009, 1019.) ██ It expressly held that Insurance Code section 533 is to be read

---

[1]Mr. Briones relies on *Surina v. Lucey* (1985) 168 Cal.App.3d 539 [214 Cal.Rptr. 509], which held a cause of action existed under Civil Code section 49 for enticing a minor from his or her parents. However, the parents' cause of action here was for emotional distress, and it is clear that all of their emotional distress was caused by the intentional sexual misconduct of Mr. Briones. We therefore do not need to consider whether they could have stated a cause of action under Civil Code section 49 for interference with the parents' custody rights. We also note that our record does not show whether the minor was a resident of the California School for the Deaf or whether she was living with her parents at the time of the alleged molestations.

as if it was included in all insurance policies, and that section excludes liability coverage for child molestation.[2] (*J. C. Penny Casualty Ins. Co.,* at p. 1019.) The court therefore held, as a matter of law, that "section 533 excludes liability insurance coverage for an insured's sexual molestation of a child." (*J. C. Penny Casualty Ins. Co.,* at p. 1028.) It is therefore clear that, to the extent the conduct alleged here was intentional conduct, coverage is barred.

Mr. Briones attempts to escape this conclusion by arguing that, under the complaint in the underlying action, there is a possibility that he may be held liable for negligent or accidental conduct which is separable from the alleged sexual misconduct. He relies on the subsequent Supreme Court case of *Horace Mann Ins. Co. v. Barbara B., supra,* 4 Cal.4th 1076. In that case, a teacher's insurance policy was significantly different from the policy in either *J. C. Penny* or this case. The policy in *Horace Mann* provided coverage for damages arising out of a teacher's educational employment activities, if caused by the acts or omissions of the insured. The policy specifically excluded coverage of civil suits arising from criminal acts of the insured. (*Id.* at pp. 1079-1080.) Thus, when the teacher in *Horace Mann* molested a student, an issue was created by the teacher's subsequent criminal conviction for violating Penal Code section 288, subdivision (a). The issue was whether the exclusion eliminated the duty to defend. Our Supreme Court held that the insurance company still had a duty to defend "[b]ecause the evidence adduced in the summary judgment proceedings demonstrated the existence of unresolved factual issues as to the insurer's potential liability under the policy based on misconduct separable from the sexual molestation . . . ." (*Horace Mann Ins. Co.,* at p. 1078.)

In *Horace Mann,* the insurance company relied on *J. C. Penny.* However, our Supreme Court disagreed with the insurance company, commenting: "The flaw in Horace Mann's reasoning is its unsupported assumption that the other alleged misconduct necessarily was part of the molestation and not in the course of [the teacher's] educational activities." (*Horace Mann Ins. Co. v. Barbara B., supra,* 4 Cal.4th 1076, 1082.) Accordingly, the court found factual disputes concerning the teacher's conduct, other than the criminal sexual molestation. Since the allegations of the complaint "evinced a possibility that [the teacher] would be held liable for damages within the coverage of the policy stemming from [his] negligent nonsexual conduct in his public relationship with [the student]," the court found at least a possibility of liability which gave rise to the duty to defend. (*Id.* at p. 1083.) In

---

[2]Insurance Code section 533 provides: "An insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." The purpose of the statute is to discourage willful torts. (*J. C. Penny Casualty Ins. Co. v. M. K., supra,* 52 Cal.3d 1009, 1021.)

other words, "the fact of [the teacher's] conviction could not eliminate the duty to defend against the other allegations of misconduct, not amounting to criminal molestation." (*Ibid.*)

The Supreme Court in *Horace Mann* discussed the possibility that artful plaintiffs' lawyers would try to "plead around" *J. C. Penny* by alleging misconduct not rising to the level of sexual molestation. (*Horace Mann Ins. Co. v. Barbara B., supra*, 4 Cal.4th 1076, 1084.) The court said: "Our decision is no license to 'plead around' *J. C. Penny* . . . . We do not sanction relabeling child molestation as negligence in order to secure insurance coverage for the plaintiff's injuries. We merely hold to the established rule that a potential for coverage, whether found within the four corners of the complaint or in facts extrinsic to it, gives rise to the defense duty. [Citation.]" (*Id.* at p. 1086.)

It is therefore clear that, while an insurer is not liable for intentional conduct, it may be liable for negligent conduct. It is also clear that child sexual molestation is always intentional conduct. (*J. C. Penny Casualty Ins. Co. v. M. K., supra*, 52 Cal.3d 1009, 1025.) Since almost all of the conduct alleged in the complaint is intentional child sexual molestation, there is little potential for coverage. However, to prevail, the insurer must show that there is *no* potential for coverage. (*Montrose Chemical Corp. v. Superior Court, supra*, 6 Cal.4th 287, 300.) The issue thus becomes whether the other conduct alleged in the complaint establishes a potential for coverage. (*Ibid.*)

Some of the allegations of the complaint are transparent attempts to "plead around" *J. C. Penny*. There is simply no such thing as "negligent stalking," "negligent harassment," or "unintentional child molestation." The few remaining allegations of negligence fall within the general category of child molestation. These include allegations that Mr. Briones (1) "negligently caused their relationship to become far more intense than that of teacher-student . . ."; (2) "negligently interfered with the familial relationship" and "negligently interfered with the rights of [the parents] to the care, custody, and companionship of their daughter by spending time with and negligently engaging in sexual intercourse with Plaintiff Connie [L.] . . ."; (3) negligently touched private areas while giving karate lessons; (4) negligently performed a breast examination; (5) showed affection and being flirtatious in front of her fellow students; and (6) inundated her with letters "in an effort to discuss their relationship and the status thereof." Thus, all of these activities, even if they are considered not to be intentional conduct, are still sexual misconduct, i.e., they were all directed towards the goal of sexual intimacy.

"California law and applicable precedents do not allow the recharacterization of such clearly intentional and willful sexual misconduct as merely

negligent or nonwillful, so as to trigger insurance coverage. . . . [¶] . . . [I]t is clear that [Insurance Code] section 533, and the public policy it represents, bar the attempt to shift liability for intentional sexual harassment and associated employment-related torts (claims of wrongful discharge, infliction of emotional distress, battery, and sexual assault) to an insurer. [Citation.]" (*Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.* (1993) 14 Cal.App.4th 1595, 1603 [18 Cal.Rptr.2d 692].)

Under the policy in *Horace Mann*, there was a possibility of liability for other misconduct not amounting to sexual molestation. ▮▮▮ Under the policy here, there was no such possibility because the policy terms were significantly different: the policy here insured only against an "accident or occurrence" and specifically excluded coverage for injuries arising from sexual molestation and harassment. Since all of the conduct alleged in the complaint falls within the general category of sexual misconduct, the insurance company had no duty to either indemnify or defend the teacher from the effects of either his willful, intentional misconduct (Ins. Code, § 533) or his negligent or reckless conduct because "[t]his exclusion applies whether damages arise from an insured's act or failure to act."

We therefore conclude that the trial court properly focused on the allegations of the complaint and that those allegations were all allegations of sexual misconduct that were specifically excluded from the coverage of the homeowners policy. It correctly determined that Northland had established that there was no potential for coverage, and thus there was no duty to defend nor indemnify.

Northland also convinced the trial court that the alleged sexual misconduct did not constitute an accident or occurrence under the policy. ▮▮▮ "Here, the express terms of the policy extend coverage only for claims against the insured 'resulting from an accidental event.' In its plain and ordinary sense, 'accidental' means 'arising from extrinsic causes[;1] occurring unexpectedly or by chance[; or] happening without intent or through carelessness.' [Citation.]" (*St. Paul Fire & Marine Ins. Co. v. Superior Court* (1984) 161 Cal.App.3d 1199, 1202 [208 Cal.Rptr. 5].) Similarly, in *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558 [334 P.2d 881], our Supreme Court said: "No all-inclusive definition of the word 'accident' can be given. It has been defined 'as "a casualty—something out of the usual course of events and which happens suddenly and unexpectedly and without design of the person injured." [Citations.]' It ' "includes *any event which takes place without the foresight or expectation of the person acted upon or affected by the event.*" ' [Citations.]" (*Id.* at p. 563.)

We agree with Northland that the alleged acts of Mr. Briones cannot be considered accidental. They all represented intentional conduct: rape is intentional conduct, stalking is intentional conduct, and harassing by written communications is intentional conduct. As discussed above, we find all of the conduct alleged in the complaint is intentional sexual misconduct. It cannot be considered accidental: "An intentional act is not an 'accident' within the plain meaning of the word. [Citations.]" (*Royal Globe Ins. Co. v. Whitaker* (1986) 181 Cal.App.3d 532, 537 [226 Cal.Rptr. 435], fn. omitted.)

The same is true for the allegations of "accidental touching." As respondent points out, the tort of sexual battery requires an intent to cause a harmful or offensive contact. (Civ. Code, § 1708.5.) Since an intent is required, the conduct is intentional sexual misconduct which is, as noted above, excluded from coverage by both the terms of the policy and Insurance Code section 533.

We also agree with respondent and the trial court that there was no "occurrence" within the meaning of the policy. ■ An "occurrence" is generally defined in the insurance industry as an accident resulting in bodily injury or property damage. (*Collin v. American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 804 [26 Cal.Rptr.2d 391].) Although the term is not defined in the homeowners policy here, intentional actions are generally not occurrences, because they are not accidents. (*Dyer v. Northbrook Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1547 [259 Cal.Rptr. 298]; *Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 595-601 [79 Cal.Rptr.2d 134] [no "occurrence" in nonconsensual sex case; negligence argument rejected]; *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, *supra*, 14 Cal.App.4th 1595, 1610 [sexual harassment not an "occurrence" because it was not unexpected or unintended from the viewpoint of the insured].) ■ Mr. Briones cites no contrary authority and we agree with the trial court that there was no accident or occurrence within the meaning of the policy and Insurance Code section 533. (*Coit Drapery Cleaners, supra*, at p. 1610; *Lipson v. Jordache Enterprises, Inc.* (1992) 9 Cal.App.4th 151, 159 [11 Cal.Rptr.2d 271] [intentional conduct is not an "occurrence"].) Thus, there was no potential for coverage and Northland's summary judgment motion was properly granted.

## DISPOSITION

The judgment is affirmed. Northland is to recover its costs on appeal.

Gaut, J., concurred.

**RAMIREZ, P. J.,** Dissenting.—Today the majority holds that each of the injuries alleged in the underlying complaint arose from the alleged

intentional sexual misconduct of defendant Daniel Briones, Jr., (Briones) and based thereon concludes that there was no potential that he might be covered for his acts under the policy of insurance he purchased from plaintiff Northland Insurance Company (Northland). I certainly agree with the majority that the acts Briones is alleged to have engaged in are reprehensible, especially in light of the position of trust that he held among a group of perhaps particularly vulnerable young people. However, because of the procedural posture in which this case comes before us, we are required by law to broadly construe the allegations of the underlying complaint in favor of Briones, and to resolve any doubts as to whether the facts give rise to a duty to defend in his favor. (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081, 1084 [17 Cal.Rptr.2d 210, 846 P.2d 792] (*Horace Mann*); *Oliver v. County of Los Angeles* (1998) 66 Cal.App.4th 1397, 1403 [78 Cal.Rptr.2d 641].) Thus, for the reasons that follow, I respectfully dissent.

Northland claims that the acts alleged in the underlying complaint are all intentional and thus do not constitute "accidents" or "occurrences" in the insurance context. Neither term is defined in the policy. However, developed case law holds that an accident is an event that occurs unexpectedly, by chance, or without intent, foresight or expectation. (*Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558, 563 [334 P.2d 881]; *St. Paul Fire & Marine Ins. Co. v. Superior Court* (1984) 161 Cal.App.3d 1199, 1202 [208 Cal.Rptr. 5].) Cases also hold that if an insured intends to do an act that results in injury, whether or not there was any expectation or intent that harm would result from the act, there is no covered "accident" or "occurrence" under the policy. (*David Kleis, Inc. v. Superior Court* (1995) 37 Cal.App.4th 1035, 1047 [44 Cal.Rptr.2d 181].)

Northland also relies on an exclusion to coverage contained in Briones's policy that provides, "[t]his insurance does not apply to any 'bodily injury,' 'property damage,' 'personal injury,' or 'medical expense' arising out of:

"1. Physical abuse, sexual abuse, sexual molestation or sexual harassment by anyone; . . .

"This exclusion applies whether damages arise from an insured's act or failure to act." Northland urges, and the majority accepts, that all of the claims in the underlying complaint involve intentional acts of sexual abuse, molestation and/or harassment. Thus, there can be no coverage under the policy as a matter of law.

I do not dispute that the great majority of the allegations in the first amended complaint are not covered acts, either because they are necessarily

intentional or because they constitute sexual abuse, molestation and/or harassment. However, an insurance company must defend even a suit that only *potentially* seeks damages within the coverage of the policy. (*Horace Mann, supra,* 4 Cal.4th at p. 1081.) In *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], the court found there was a duty to defend even when the complaint alleged bodily injury as the result of only intentional conduct, because it was conceivable that it could be amended to allege merely negligent conduct. (*Id.* at p. 277.) The duty exists even when coverage is in doubt and is ultimately not established, and even when noncovered acts predominate the third party complaint. (*Horace Mann, supra,* 4 Cal.4th at pp. 1081, 1084; *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

Keeping these rules in mind and also keeping in mind that this court must make all possible inferences and resolve all doubts in favor of Briones, both because he is the insured and because he is the party opposing a motion for summary judgment, I cannot agree with the majority's interpretation of the underlying complaint or its consequent affirmance of the summary judgment. In the sixth cause of action of the underlying complaint, for negligent infliction of emotional distress, it is alleged that Briones, "while teaching karate to Plaintiff CONNIE L[.], . . . from time to time and on numerous occasions, negligently made contact with Plaintiff CONNIE L[.]'s buttocks and genital area, on the outside of her clothing . . . ." I do not believe that the only possible conclusion that may be drawn from this allegation is that the conduct was either intentional or constituted molestation.

In *Horace Mann,* as here, the insurer attempted to convince the Supreme Court that all of the alleged misconduct was either sexual molestation or directly related to the sexual molestation. (*Horace Mann, supra,* 4 Cal.4th at p. 1082.) The court found this argument flawed because it required an "unsupported assumption that the other alleged misconduct necessarily was part of the molestation." (*Ibid.*) The court recognized that "it is not always easy for a court to draw the line between appropriate and inappropriate interaction [between people]. Neither precedent nor logic dictates that a molester cannot also be liable for torts of negligence against the victim which are apart from, and not integral to, the molestation." (*Id.* at p. 1083.) Here, as in *Horace Mann,* "[t]he record is devoid of evidence which establishes the chronology or sequence of events comprising the alleged misconduct or that these actions were integral to the molestation." (*Id.* at pp. 1083-1084.)

It is not inconceivable that while engaging in a contact sport such as karate, one might unintentionally come into contact with virtually any part of

the coparticipant's body. Further, the record is completely silent regarding when these negligent contacts took place in the context of the other allegations. Therefore, it is possible that some or all of them occurred before any sort of sexual relationship developed between Briones and Connie L. Thus, there is some possibility that the acts described above, both as alleged and in light of additional facts that may later be revealed, would not be found to constitute either intentional or sexual misconduct. Under such circumstances this court is compelled to reverse the summary judgment. To do otherwise would violate the standard of review imposed by California law. (*Horace Mann, supra,* 4 Cal.4th at pp. 1081, 1084; *Oliver v. County of Los Angeles, supra,* 66 Cal.App.4th at p. 1403.)

As was the insurer in *Horace Mann,* the majority here is concerned with the fact that the plaintiffs in the underlying case have attempted to "plead around" the policy's exclusions by crafting allegations of conduct that does not rise to the level of sexual molestation. This concern should not affect the result in this case.

In the first instance, in *Horace Mann,* the Supreme Court recognized that the insurer's argument missed the point, concluding that "[i]f the parties to a declaratory relief action dispute whether the insured's alleged misconduct should be viewed as essentially a part of a . . . sexual molestation, or instead as independent of it and so potentially within the policy coverage, . . . then factual issues exist precluding summary judgment in the insurer's favor. Indeed, the duty to defend is then *established.* . . . [Citation.]" (*Horace Mann, supra,* 4 Cal.4th at p. 1085, original italics.) The Supreme Court reemphasized that the focus is not on whether the underlying claims are legitimate in *Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at page 19, when it again held that the duty to defend applies even to claims that are " 'groundless, false, or fraudulent.' " Hence, while the court "do[es] not sanction relabeling child molestation as negligence," it recognizes that the proper inquiry is simply whether there is a possibility of coverage based on the allegations of the underlying complaint. It does not hold that courts may grant declaratory relief on summary judgment by concluding that the claims are unsupportable. (*Horace Mann, supra,* 4 Cal.4th at p. 1086.) Indeed, if Connie L.'s claims were "so insubstantial as not to warrant any damages, [the insurer] should have raised that defense in the underlying action for [the insured's] benefit, rather than in this declaratory relief action to his detriment. [Citation.]" (*Ibid.*)

Second, reaching the conclusion that the allegation is necessarily an attempt to "plead around" the policy exclusions is contrary to our standard of review, which requires that we make all inferences in Briones's favor.

(*Horace Mann*, *supra*, 4 Cal.4th at pp. 1081, 1084; *Oliver v. County of Los Angeles*, *supra*, 66 Cal.App.4th at p. 1403.) We must consider not whether it is possible that Connie L. has attempted to "plead around" the exclusions, but rather, whether it is possible that her claims may be legally and factually supported. In such circumstances the only reasonable conclusion is to accept the latter of the two propositions. Having thus accepted that the claims may be supported, it must be concluded that the possibility for coverage exists. (*Horace Mann*, *supra*, 4 Cal.4th at p. 1081.)

As the Supreme Court observed in *Horace Mann*, *supra*, 4 Cal.4th at pages 1086-1087, "[s]ome may consider the result in this case . . . to be unfortunate. No one, of course, wants to provide aid and comfort to child molesters. But courts cannot allow legal reasoning to yield to emotionalism when determining the extent of an insurance carrier's defense duty." Because we are constrained by our standard of review to broadly construe the allegations of the underlying complaint in favor of Briones, and to resolve any doubts as to whether the facts give rise to a duty to defend in his favor, my review of the record mandates that the underlying complaint be interpreted as giving rise to the possibility of coverage. Therefore, summary judgment was not properly granted and must be reversed.

On July 7, 2000, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied September 27, 2000. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.