**In re John Kevin ELDER, Debtor.**

**Freda Edith Mermelstein, Appellant,**

v.

**John Kevin Elder, Appellee.**

**No. SA CV 00–692 DOC.**

United States District Court,
C.D. California.

May 16, 2001.

---

**10.** 119 S.Ct. at 1424.

Robert A. Mosier, McGregor & Mosier, Laguna Hills, CA, for Freda Edith Mermelstein.

Bradley E. Brook, Pachulski Stang Ziehl Young & Jones, Los Angeles, CA, for John Kevin Elder.

## ORDER REVERSING IN PART AND AFFIRMING IN PART

CARTER, District Judge.

This case is an appeal from a bankruptcy court discharge of Appellee John Kevin Elder's debts pursuant to 11 U.S.C § 727 of the Bankruptcy Code. Prior to the bankruptcy proceeding, a state court civil action was initiated by Appellant Freda E. Mermelstein, who was awarded damages. Mermelstein sought an order from the bankruptcy court declaring the damage award nondischargeable. The bankruptcy court discharged most of the award, and Mermelstein now appeals. After consideration of the briefs, the record, and oral argument on May 14, 2001, the Court REVERSES IN PART and AFFIRMS IN PART.

## I.

## BACKGROUND

The pertinent facts underlying the state court action are as follows Mermelstein was a tenant in an apartment building owned by Elder's parents and sister. Elder, who did not live in the building, often made use of a private garage in the building. In February of 1993, Mermelstein temporarily parked her car in front of Elder's garage while she carried groceries to her apartment. Elder, wishing that the car be moved from the garage entrance, learned from another tenant that the car belonged to Mermelstein. The tenant notified Mermelstein, who then had a brief encounter with Elder. This appears to have been their only face-to-face contact. However, from this encounter Mermelstein believes that Elder learned where Mermelstein lived and what car she drove.

In March of 1993, Elder broke into Mermelstein's automobile and stole a cellular telephone and some videocassettes. Several days later, Elder broke into Mermelstein's apartment and removed various undergarments and family photographs. Elder took the items to the garage he used in the building Elder used these items to fulfill certain sexual fantasies He altered and defaced the photographs and cut holes out of Mermelstein's undergarments. The items were later found in the garage stained with semen

On March 14, Elder placed a phone call to Mermelstein from a telephone he had wired by running a long wire from the apartment complex's main telephone switch box to the garage he was using. Appendix, vol. I, Tab 6, at 108–09. The call was answered by Mermelstein's boyfriend. Elder hung up immediately. Apparently no other telephone calls were placed by Elder to Mermelstein.

On May 7, 1993, Elder was convicted in state court of first degree burglary of Mermelstein's apartment Elder received a sentence of six years in state prison and was required to pay restitution in the amount of $1,800.00. Appendix, vol VII, Tab 67, at 1368–69. As of the date of the bankruptcy proceeding, he had not paid any of this restitution. On June 8, 1993, Elder was convicted of second degree burglary of Mermelstein's automobile and received a sentence of three years to be served concurrently with the six years for the apartment burglary. Appendix, vol. VII, Tab 69, at 1388–89

On February 8, 1994, Mermelstein filed a complaint in California Superior Court in Los Angeles against Elder, his parents, and other relatives. On August 11, 1994, Mermelstein filed a second amended complaint asserting six causes of action against all defendants: (1) negligence, (2) tres-

pass/conversion, (3) negligent infliction of emotional distress, (4) invasion of privacy, (5) breach of contract, and (6) intentional infliction of emotional distress Punitive damages were requested for the second, third, fourth, and sixth causes of action. Subsequently, Mermelstein's punitive damages request was struck from the third cause of action.

A jury trial commenced on July 7, 1997. After Mermelstein made her opening statement, all defendants other than Elder were dismissed from the action. Appendix, vol. VI, Tab 56, at 1203–10. During the trial, it appears that the original causes of action were modified and reduced, because of the dismissal of the other defendants, to include only two: (1) stalking and (2) intentional infliction of emotional distress. The record on this appeal does not contain any copies of the state court judge's dismissal of the other causes of action. However, the jury instructions clearly include only these two claims.

On July 11, 1997, the jury returned a general verdict finding Elder liable and awarding Mermelstein $115,000 in compensatory damages and $50,000 in punitive damages. Mermelstein states that the jury found Elder liable on "all causes of action." Appellant's Opening Brief at 5. However, the verdict was only a general verdict and did not state on which of the two causes of action damages were awarded. No special verdict form reflecting any findings by the jurors supporting the judgment and no document reflecting any separate factual findings made by the court are in the record. Mermelstein was also awarded costs.

On November 20, 1998, Elder filed a Chapter 7 petition in bankruptcy court, seeking to discharge, among other debts, the judgment awarded to Mermelstein.

On February 19, 1999, Mermelstein initiated an adversary proceeding in the bankruptcy court challenging the dischargeability of Elder's debt to her. Mermelstein asserted that the full amount of the state court judgment was nondischargeable under 11 U.S.C. § 523(a)(4) and (a)(6), which provide that damages for larceny and for "willful and malicious" injury are not dischargeable. The bankruptcy court held that whether Elder's acts met this standard could not be determined from the state court proceedings, and thus collateral estoppel could not be used to establish nondischargeability. The bankruptcy court based its judgment on what it viewed as an insufficiency of evidence concerning Elder's intent with respect to the acts for which he was held liable for damages. Because the record of the state civil action failed to provide evidence that the bankruptcy court could use to determine whether the required level of intent to prevent a discharge of debts was met, the bankruptcy court refused to allow the record into evidence.

Instead, the bankruptcy court required the parties to present evidence independent of the state civil action to allow the court to determine whether the requisite standard of intent had been met. After a two-day trial on dischargeability, which took place on December 6 and 10, 1999, the bankruptcy court entered a judgment against Elder for the amount of $1,842.62, holding this amount alone nondischargeable.[1] The bankruptcy court discharged the rest of the state court judgment

1. This amount is the out-of-pocket costs incurred by Mermelstein as a result of Elder's actions, representing the value of the stolen undergarments, videocassettes, and cellular telephone, and the insurance deductible for repair of her car. Appendix, vol. I, Tab 6, at 222 The bankruptcy court determined that these amounts were nondischargeable under § 523(a)(6) presumably because Elder intend-

Mermelstein also challenged whether Elder should receive a discharge of any of his debts on the ground that he fraudulently transferred his assets in order to prevent creditors from reaching them. Elder had incurred sizeable legal fees as a result of the criminal and civil actions against him. Because Elder was unable to pay the fees himself, Elder's father paid most of the legal fees. Purportedly to provide recompense to his father, Elder transferred assets valued at approximately $46,000, consisting primarily of stereo and music equipment, to his father, but retained use and possession of them. This transfer occurred on March 15, 1997, more than one year prior to Elder's filing for bankruptcy. Appendix, vol. V, Tab 40, at 957–62. Mermelstein argues that because Elder maintained possession of the items he purported to transfer to his father, the transfer was fraudulent under the doctrine of "continued concealment." Appellant's Opening Brief at 25. The bankruptcy court heard arguments and evidence on this issue and ruled that there was insufficient evidence to support a finding of fraudulent transfer under § 727(a)(2), (a)(3), or (a)(4), and thus refused Mermelstein's request to deny Elder's discharge. Appendix, vol. II, Tab 7, at 410–11

Attorneys for both parties moved for an award of fees and costs. In addition, the attorney for Elder moved the court to impose a sanction on Mermelstein and her counsel for pursuing a case for the purpose of harassing and creating expense for Elder. Appendix, vol. IV, Tab 23, at 805. On February 16, 2000, after holding a hearing on this matter, the bankruptcy court imposed a sanction of $3,000 against Mermelstein and her counsel, jointly and severally, for bringing what the court described as an "extremely weak" claim, referring to Mermelstein's challenge to the

ed to injure this property. Appendix, vol. IV, Tab 31, at 875.

dischargeability of Elder's debt on the ground that a debt incurred for willful and malicious acts cannot be discharged under § 523(a)(6) of the Bankruptcy Code.

## II.

## JURISDICTION AND STANDARD OF REVIEW

This Court's jurisdiction over this appeal is conferred by 28 U.S.C. § 158(a)(1).

■ The Court reviews the bankruptcy court's legal conclusions *de novo. In re Tucson Estates, Inc.,* 912 F.2d 1162, 1166 (9th Cir.1990). Thus, the Court reviews the bankruptcy court's decision as to the availability of issue preclusion *de novo. See In re Palmer,* 207 F.3d 566, 567–68 (9th Cir.2000) (reviewing bankruptcy court's determination regarding collateral estoppel *de novo* ); *Hydranautics v. Film-Tec Corp.,* 204 F.3d 880, 885 (9th Cir.2000); *Siegel v. Federal Home Loan Mortgage Corp.,* 143 F.3d 525, 528 (9th Cir.1998), *Steen v. John Hancock Mut. Life Ins. Co.,* 106 F.3d 904, 910 (9th Cir.1997).

■ The Court reviews the bankruptcy court's factual findings for clear error. *In re Tucson Estates,* 912 F.2d at 1166. A finding of fact is clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

## III.

## DISCUSSION

The issues presented on appeal are (1) whether the bankruptcy court improperly denied application of issue preclusion to

the state court civil verdict and thereby improperly discharged Elder's debt to Mermelstein; (2) whether the bankruptcy court erred in denying Mermelstein's request to deny Elder's general discharge on the ground that Elder fraudulently transferred his assets in violation of § 727; and (3) whether the bankruptcy court improperly imposed sanctions upon Mermelstein and her attorney

## A. Dischargeability of Elder's Debt to Mermelstein

In a Chapter 7 petition, discharges of debts are governed by the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, specifically §§ 523 and 727. Unless one or more of the enumerated grounds for denial of a discharge specified in § 727 are shown to exist, a bankruptcy court must grant a discharge. However, § 523 of the Code lists certain types of debts that are nondischargeable even after a debtor has received a § 727 discharge Sections 523(a)(4) and (6) of the Bankruptcy Code provide: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt .... (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ... (6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

▆▆▆ The party seeking to establish nondischargeability of the debt shoulders the burden of proof. *In re Hicks*, 184 B.R. 954, 959 (Bankr.C.D.Cal.1995). The burden of proof required for establishing an exception to discharge is a preponderance of evidence *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991).

The United States Supreme Court recently clarified the scope of "willful and malicious injury" in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). In that case, a patient sued her doctor for malpractice and obtained a jury verdict of approximately $355,000 in damages. The doctor subsequently filed for bankruptcy, and the patient challenged the dischargeability of the damage award on the ground that under § 523(a)(6), a debt incurred for "willful and malicious injury" by the debtor cannot be discharged. The patient argued that the doctor "intentionally rendered inadequate medical care" to her and that it "necessarily led to her injury." *Id.* at 61, 118 S.Ct. at 976. The Court, however, held that for a debt to be nondischargeable, the party challenging the discharge must demonstrate that the debt was the result of an act involving an intentional or deliberate *injury,* not merely a reckless, deliberate, or intentional *act* that led to injury. *Id.* at 61, 118 S.Ct. at 977 It is not enough that the act itself was intentional. Rather, the act must have been carried out with the actual intent to cause injury. Thus, it is not sufficient that an injury result from a negligent act. In reaching this conclusion, the Court specifically indicated that this standard corresponds to the traditional category of intentional torts. *Id.* (stating that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts").[2]

---

**2.** The Court's reading of § 523(a)(6) is given implicit support by § 523(a)(9), which specifically prohibits discharge of a debt incurred as a result of "death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance." Most car accidents are considered negligent or reckless, and therefore resulting debts are dischargeable. *E.g., In re Venegas*, 257 B.R. 41, 48 (Bkrtcy.D.Idaho 2001). *But cf. Steiger v. Clark County*, 159 B.R. 907, 913 (9th Cir. BAP 1993) (holding that a debt resulting from ve-

Mermelstein's position is that the entire amount of Elder's debt to her is nondischargeable. Further, she argues that Elder's level of intent was necessarily decided in the state court proceeding, and therefore the nondischargeability of the debt can be determined through application of collateral estoppel, or issue preclusion.

## 1. General Principles of Issue Preclusion

 Issue preclusion bars relitigation of an issue decided previously in judicial or administrative proceedings, provided that the party against whom the prior decision was rendered enjoyed a full and fair opportunity to litigate the issue in the earlier proceeding. *See Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). The principles of issue preclusion apply in dischargeability proceedings in bankruptcy *See Grogan*, 498 U.S. at 284 & n. 11, 111 S.Ct. at 657. In determining the preclusive effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply the forum state's law of issue preclusion. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982); *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir.1995); *Bugna v. McArthur (In re Bugna)*, 33 F.3d 1054, 1057 (9th Cir.1994) (applying California law of issue preclusion to determine the dischargeability of a debt under 11 U.S.C § 523(a)(4))

 Under California law, the application of issue preclusion requires that the following elements be met: "(1) The issue sought to be precluded from relitigation must be identical to that decided in a

former proceeding; (2) The issue must have been actually litigated in the former proceeding; (3) It must have been necessarily decided in the former proceeding; (4) The decision in the former proceeding must be final and on the merits; and (5) The party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding" *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997), *aff'd*, 163 F.3d 609, 1998 WL 668120 (9th Cir.1998). The party seeking to apply issue preclusion has the burden of proving that each element is satisfied. *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir.1996). To sustain this burden, a party must introduce a record sufficient to reveal the controlling facts and the exact issues litigated in the prior action. Any reasonable doubt as to what was decided in the prior action will weigh against applying issue preclusion. *Id.*

## 2. Issue Preclusion in this Case

 Mermelstein argues that the bankruptcy court should have given preclusive effect to the state court verdict with respect to the issue of whether Elder's debt to her was the result of "willful and malicious" injury. The bankruptcy court refused to give preclusive effect to the state court verdict on the ground that the issue of Elder's willfulness and maliciousness had not been determined by the state court. In reaching this decision, initially the bankruptcy court focused solely on the causes of action alleged in the state court complaint and did not consider the jury instructions. Appendix, vol. I, Tab

hicular homicide was nondischargeable). Section 523(a)(9) makes an exception for drunken driving, apparently because of the strong societal disapprobation of drunken driving, which results in it being deemed to

rise to the level of an intentional tort. Reading § 523(a)(6) as the plaintiff in *Geiger* requested would obviate the need for § 523(a)(9).

6, at 64–66, 160; vol. VI, Tab 51, at 1083–86. After Mermelstein drew the court's attention to the jury instructions, the court did consider the jury instruction for intentional infliction of emotional distress. Appendix, vol. I, Tab 6, at 52–56. However, because the instruction has both an intentional prong and a reckless prong, the bankruptcy court concluded that it could not determine whether the jury had found that the conduct that gave rise to the debt in question was "willful or malicious." Accordingly, the bankruptcy court held that issue preclusion was not available.

To the extent that the bankruptcy court based its decision on the original causes of action and refused to consider the jury instructions, it erred. The jury instructions are the clearest indication of what claims actually went to the jury. No jury instructions were given for the original negligent claims The only causes of action described in the jury instructions were stalking and intentional infliction of emotional distress. Thus, the issue is whether a general verdict on stalking, intentional infliction of emotional distress, or both necessarily includes a determination that the acts were "willful and malicious."

In addition, for the reasons that follow, to the extent the bankruptcy court based its decision on the jury instructions, it also erred.

Because the state jury verdict was a general one, it cannot be known whether the jury found Elder liable for stalking, for intentional infliction of emotional distress, or both. If the jury's finding on one cause of action over the other would leave any uncertainty as to whether the jury found the requisite intent to satisfy *Geiger*, then the Court must conclude that *Geiger* has not been met. If, however, the elements of each cause of action satisfy *Geiger*, the standard would be met regardless of whether the jury found Elder liable for stalking, intentional infliction of emotional distress, or both.

For Mermelstein to prevail on stalking, the jury had to find that "(1) The defendant engaged in a pattern of conduct the intent of which was to follow, alarm, or harass the plaintiff, (2) As a result of that pattern of conduct, plaintiff reasonably feared for her safety or the safety of an immediate family member; and (4)[sic] The defendant's pattern of conduct caused plaintiff to suffer injury, damage, loss, or harm." Appendix, vol. VI, Tab 51, at 1083.

Thus, in order for the jury to have found Elder liable for stalking, it must have found that he engaged in conduct specifically with intent to cause harm. Nothing short of finding that he engaged in "a pattern of conduct the intent of which was to follow, alarm or harass" Mermelstein would permit the jury to find Elder liable for stalking. By the very terms of the jury instruction, then, stalking is "not merely a deliberate or intentional *act* that leads to injury," but one in which the actor intends the *consequences* of his act *Geiger*, 523 U.S. at 61, 118 S.Ct. at 977. This view of stalking is confirmed by a recent opinion of the California Court of Appeal, which states that "[t]here is simply no such thing as .. 'negligent stalking.'" *Northland Ins. Co. v. Briones*, 81 Cal.App.4th 796, 806, 97 Cal.Rptr.2d 127, 133 (2000). Specifically, the court held that there was no possibility of insurance coverage for a suit alleging child molestation because such acts are always intentional rather than negligent. The court stated:

> [O]ur Supreme Court has clearly declared that "child molestation is always intentional, it is always wrongful, and it is always harmful." There is simply no such thing as "unintentional child molestation," "negligent harassment," "negli-

gent stalking," or "accidental intercourse."

*Briones,* 81 Cal.App.4th at 806, 97 Cal. Rptr.2d at 133 (internal citation omitted). Thus, the court analogized stalking to child molestation, which it holds is always intentional, wrongful, and harmful. For this reason, stalking meets the *Geiger* standard of an act that intends injury and is therefore a type of conduct that gives rise to a judgment that cannot be discharged in a bankruptcy proceeding.

Elder argues that liability for stalking is not necessarily enough to satisfy *Geiger.* Elder contends that the jury could have found him liable for stalking Mermelstein if it found only that he intended "to follow" her. While "follow" may not have the immediately injurious connotations that "alarm" and "harass" do, a pattern of conduct consisting of following someone is injurious Further, Elder parses *Geiger* too carefully. Nowhere does *Geiger* suggest that intentional torts no longer satisfy § 523(a)(6). In fact, it specifically states that § 523(a)(6) "triggers in the lawyer's mind the category of 'intentional torts,' as distinguished from negligent or reckless torts." *Geiger,* 523 U.S. at 61, 118 S.Ct. at 977. Finally, as Elder himself almost concedes, in considering dischargeability the court cannot override the jury's verdict simply because it appears that the jury may have been incorrect in its determination. The fallacy of Elder's argument can be demonstrated by considering a more conventional intentional tort. If someone hits another and is found liable for assault and battery, the debt is not dischargeable under *Geiger. See Baldwin v. Kilpatrick (In re Baldwin),* 245 B.R. 131, 137 (9th Cir. BAP 2000), *aff'd,* 249 F.3d 912 (9th Cir.2001). One cannot later claim that the

hitting was an accident, because that argument contradicts the jury's verdict.[3]

Even if the jury found Elder liable not for stalking, but for intentional infliction of emotional distress, the debt arising from the liability would still not be dischargeable under the *Geiger* standard

■ In order for the Mermelstein to prevail on intentional infliction of emotional distress, the jury had to find that.

(1) The defendant engaged in outrageous conduct;

> (2) (a) The defendant intended to cause plaintiff to suffer emotional distress; or

>> (b) (1) The defendant engaged in conduct with reckless disregard of the probability of causing plaintiff to suffer emotional distress;

>> (2) The plaintiff was present at the time the outrageous conduct occurred, and

>> (3) The defendant knew that the plaintiff was present;

(3) The plaintiff suffered emotional distress; and

(4) Such outrageous conduct of the defendant was a cause of the emotional distress suffered by the plaintiff.

Appendix, vol. VI, Tab 51, at 1085. Thus, to have found Elder liable for intentional infliction of emotional distress, the jury must have found either that (a) Elder "intended" to cause harm or (b) Elder engaged in conduct that was reckless as to the likelihood of causing harm to Mermelstein, that Mermelstein was present at the time the alleged conduct occurred, and that Elder knew that Mermelstein was present.

---

**3.** Elder also contended, at oral argument, that Mermelstein may have feared for the safety of her child, rather than herself. *Geiger,* however-

er, is concerned with Elder's intent, not Mermelstein's actual response.

■ It is undisputed that the first prong of this instruction, the intentional prong, satisfies the *Geiger* standard It is also undisputed that the second prong, the reckless prong, does not satisfy the *Geiger* standard. Here, however, considering the state court record, it is clear that the jury could not have found Elder liable under the reckless prong of the emotional distress instruction. The record of the underlying proceeding is admissible for determining whether to apply issue preclusion. *Schiro v. Farley*, 510 U.S. 222, 232, 114 S.Ct. 783, 790, 127 L.Ed.2d 47 (1994) (examining the record of a prior proceeding taking into account the pleadings, evidence, charge, and other relevant matter in order to determine whether issue preclusion applied); *Frank v. United Airlines, Inc.*, 216 F.3d 845, 859 (9th Cir. 2000). It is undisputed that Mermelstein was not present at the time the events occurred. No evidence was adduced to this effect and the parties agree that the primary events at issue—Elder taking the items from Mermelstein's apartment, taking them to the garage, and engaging in sexual fantasies with them—occurred when Mermelstein was not present[4] Appellant's Opening Brief at 8, 19; Appellee's Brief at 4–5. Therefore, the jury could not have found for Mermelstein under the reckless prong. It either must have found for her on this claim under the intentional prong, or it found for her only on the stalking claim, not on the emotional distress claim.

Thus, the evidence supports Mermelstein's contention that the issue of Elder's intent, which is the same issue that the bankruptcy court had to consider in determining the dischargeability of Elder's debt under the Bankruptcy Code, was necessarily determined in the underlying state court action Given the undisputed fact that Mermelstein was not present when Elder committed the acts at issue, no reasonable jury could have found for Mermelstein on the emotional distress claim under the reckless prong. Therefore, whether the jury found Elder liable for stalking or for intentional infliction of emotional distress—and certainly if it found liability for both—the requisite level of intent to bring Elder's debt within the exception to dischargeability under the *Geiger* standard exists.[5] The bankruptcy court's contrary conclusion, that the determination of intent underlying the state court verdict is not the same as that required under *Geiger*, was erroneous

Thus, the issue to be decided in the nondischargeability action is identical to that decided in the former proceeding. The issue was actually litigated and necessarily decided. The state court judgment is final and on the merits, and the parties are the same as in the state court action. Therefore, issue preclusion was available.

4. Elder's counsel asserted at oral argument that it is possible that the jury found Elder liable for intentional infliction of emotion distress on the reckless prong because Mermelstein was present after the police arrived at the scene, at which time she identified the items stolen by Elder as belonging to her. This argument fails on two grounds. First, the "presence" of Mermelstein occurred after the alleged acts committed by Elder. Second, there is nothing in the record indicating that this fact was presented to the jury. On appeal, the Court will not speculate on matters not included in the record.

5. Elder questions whether the state trial court jury's verdict was correct given the evidence presented at trial. However, the Court is not in a position to question the state jury's determination of the facts. Whether the verdict is unsupported by the evidence presented at trial is a question that should have been taken up on appeal following the trial. A dischargeability action is not the appropriate place to raise this issue.

Further, preclusion should have been applied. A line of cases relying on *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), states that once the trial court determines that issue preclusion is available, whether to apply it is within the trial court's discretion. The trial court's decision is reviewed for abuse of discretion. *See Bates v. Union Oil Co. of Cal.*, 944 F.2d 647, 651 (9th Cir.1991), *Robi v. Five Platters*, 838 F.2d 318, 321 (9th Cir.1988); *Plaine v. McCabe*, 797 F.2d 713, 718 (9th Cir.1986). These cases, however, involve offensive or defensive use of issue preclusion. In contrast, here, not only is direct preclusion [6] at issue, but each of the threshold requirements for applying issue preclusion have been met. Further, none of the factors or concerns that might weigh against the application of issue preclusion are present here. For example, fairness concerns such as whether the prior action involved so small an amount or was in such an inconvenient forum that the defendant may not have aggressively or fully litigated, whether applying issue preclusion would raise or lower incentives to join all potential parties in a suit, or whether the total amount of litigation will increase or decrease are not present in this case. On the other hand, the three policies underlying issue preclusion in California—to protect the litigants from the burden of litigating an identical issue with the same party, to preserve the integrity of the judicial system, and to promote judicial economy—would be served by applying issue preclusion in this case. *Baldwin v. Kilpatrick*, 249 F.3d 912, 918–19 (9th Cir.2001) (holding that issue preclusion was properly applied in a bank-

ruptcy dischargeability proceeding because the debtor's intent had been fully litigated in the underlying action and all the other threshold requirements had been met) Thus, refusing to apply issue preclusion in this case would be an abuse of discretion

## B. Fraudulent Transfers

■ The Court reviews the bankruptcy court's denial of Mermelstein's request to deny Elder a general discharge for clear error. *See Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir.1997).

■ Mermelstein contends that the bankruptcy court erred in holding that because the transfer of personal property from Elder to his father took place more than a year before the debtor filed for bankruptcy, the transfer is not fraudulent under § 727.[7] To support her position, Mermelstein invokes the doctrine of "continued concealment," according to which a transfer that occurred more than a year before the filing of bankruptcy may nonetheless be deemed to be fraudulent when the evidence demonstrates that the debtor has "retained a secret beneficial interest in the legally-transferred property" and thereby continued to conceal the property interest from creditors within the year prior to the filing of the bankruptcy petition. *Id.* at 1240–41.

Mermelstein is incorrect when she asserts that the bankruptcy court denied her fraudulent transfer theory on the grounds that the transfer was more than a year prior to the petition date. While the bankruptcy court initially made comments in that regard, it then allowed Mermelstein to present evidence on this claim, including

---

6. The parties are identical in both actions

7. Section 727(a)(2)(A) provides: "The court shall grant the debtor a discharge, unless ... the debtor, with the intent to hinder, delay, or defraud a creditor or an officer of the estate

charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed .. property of the debtor, *within one year* before the date of the filing of the petition." (emphasis added).

examination of Elder and his father. An inquiry to determine whether the transfer that took place was fraudulent involves a careful determination of, among other things, the debtor's intent. The bankruptcy court allowed both parties to offer evidence and testimony, and after weighing the evidence, the court found an insufficient evidentiary basis for finding the transfer to be fraudulent. Appendix, vol. II, Tab 7, at 410–11.

The Court reviews the bankruptcy court's factual finding of no fraudulent intent for clear error Using this standard, especially given that the trial court is the best judge of witnesses' credibility, the Court shall let stand the bankruptcy court's judgment regarding fraudulent transfer. Mermelstein has provided no evidence on appeal to give the Court a "definite and firm conviction that a mistake has been committed." *United States Gypsum Co.*, 333 U.S. at 395, 68 S.Ct. at 542.

### C. Sanctions Award

The bankruptcy court's award of a sanction against Mermelstein and her counsel in the amount of $3,000, on the ground that the adversary proceeding brought against Elder was based on extremely weak claims, cannot stand in light of the Court's ruling that issue preclusion should have been applied below. For this reason, the Court overturns the imposition of the sanction.

### IV.

### CONCLUSION

Exercising *de novo* review over the bankruptcy court's determination that issue preclusion was not available, the Court REVERSES the bankruptcy court's deci-

sion and holds that issue preclusion is available and should have been applied. Accordingly, the Court rules that the entire amount of the state court judgment is NONDISCHARGEABLE. The Court also REVERSES the bankruptcy court's imposition of sanctions on Appellant and her attorney. The Court, however, AFFIRMS the bankruptcy court's § 727 decision This matter is REMANDED for the entry of orders consistent with this opinion [8]

IT IS SO ORDERED.

---

8. Mermelstein requests that the matter be remanded to a different bankruptcy judge. The Court declines to do so.